**In re CERTIFIED CORPORATION, Debtor.**

**Bankruptcy No. 85–00305.**

United States Bankruptcy Court, D. Hawaii.

July 17, 1985.

See also, Bkrtcy., 51 B.R. 154.

John A. Chanin, Honolulu, Hawaii, for plaintiff.

Anthony S. Chan, Esq., Honolulu, Hawaii, Herbert Katz, Esq., Los Angeles, Cal., for defendant.

## MEMORANDUM DECISION AND ORDER RE: ADDITIONAL COLLATERAL

JON J. CHINEN, Bankruptcy Judge.

On July 8, 1985, Certified Corporation ("Debtor") filed a Voluntary Petition under Chapter Eleven as well as a Motion for Order Authorizing Use of Cash Collateral (hereinafter referred to as "Motion for Use of Cash Collateral") and an Ex Parte Motion for an Order Shortening Time for Hearing on Motion for Order Authorizing the Use of Cash Collateral and to Limit Notice (hereinafter referred to as "Ex Parte Motion for Order Shortening Time and to Limit Notice"). In its Ex Parte Motion for Order Shortening Time and to Limit Notice, the Debtor requested that the Court grant the motion either on an ex parte basis or by way of a telephone conference or a hearing to be scheduled as soon as possible, preferably on July 9, 1985. In addition, the Debtor requested permission to limit notice to U.S. Bancorp Financial, Inc. ("U.S. Bancorp"), the only creditor with a secured interest in the collateral. On July 9, 1985, the Court entered an Order Granting Ex Parte Motion for an Order Shortening Time for Hearing on Motion for an Order Authorizing the Use of

Cash Collateral and to Limit Notice, in which the Court declined to consider the matter on an ex parte basis and set a hearing date of July 10, 1985. The Court granted the Debtor's request for an expedited hearing and to limit notice based upon the Debtor's assertion (1) that it is in the business of buying and selling wholesale grocery on a large volume, daily basis, (2) that its business involves daily cash transactions of substantial amounts and (3) that it would be unable to continue its business without an expedited approval of the use of cash collateral.

■ At the hearing on the Motion for Use of Cash Collateral, the Court noted that one of the purposes of the Bankruptcy Code is the rehabilitation, if possible, of a corporation which has sought relief under Chapter 11. In the case of the Debtor, the Court took into consideration the Debtor's statement that it employs approximately 125 employees. These employees would be adversely affected by the failure of the Debtor to successfully reorganize. The legislative history explicitly provides that the purpose of business reorganization under Chapter 11 is to permit the debtor "to restructure a business' finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for stockholders." H.R. Rep. No. 595 at 220, 1978 U.S.Code Cong. & Ad.News 5787 at 6179; *In re American Mariner Industries, Inc.*, 734 F.2d 426, 431 (9th cir. 1984).

■ On the other hand, the Court must also protect a secured creditor's collateral, which is being used by the Debtor since it is well established that the "bankruptcy power is subject to the Fifth Amendment's prohibition against taking of private property without compensation." *United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 410, 74 L.Ed.2d 235 (1982). For this reason, if a creditor, who claims an interest in the cash collateral, objects to the use of cash collateral, the Court may only allow the debtor to use cash collateral after notice and hearing and upon providing adequate protection of the

creditor's interest. *In re Sheehan*, 38 B.R. 859, 863 (Bankr.S.D.1984). In particular, 11 U.S.C. § 363(e) provides as follows:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

On July 9, 1985, U.S. Bancorp filed Objections to Motion for Use of Cash Collateral in which it requested an order prohibiting the use of cash collateral pursuant to Section 363.

At the preliminary hearing on the Debtor's Motion for Use of Cash Collateral, the Debtor acknowledged that it owed approximately $4,700,000.00 to U.S. Bancorp. In addition, the Debtor and John F. Damore ("Damore"), an officer of the Debtor, at the preliminary hearing offered the following as adequate protection for the use of U.S. Bancorp's cash collateral: inventory, accounts receivables, equipment, including certain motor vehicles, a lease of the Debtor's premises, the personal residence of Damore and interest in a holding company. The Court found that, based upon the evidence presented, the value of these assets was approximately $5,000,000.00, which consists of $1,400,000.00 in inventory, $1,000,000.00 in accounts receivables, $500,-000.00 in the lease for the premises, $700,-000.00 in the interest in the holding company and between $400,000.00 and $600,-000.00 in equipment, including certain motor vehicles. This finding was based upon the Debtor's arguments at the hearing that the loan of U.S. Bancorp was adequately protected by at least the amounts mentioned above. Based upon these preliminary findings, the Court found a slight equity in the assets which secured the loan of U.S. Bancorp and found that there is a possibility, a reasonable likelihood, that the Debtor will prevail at the final hearing. The Court, therefore, authorized the use of

cash collateral until the final hearing, which was scheduled for July 15, 1985.

However, after the Court rendered its ruling, U.S. Bancorp informed the Court that it did not have liens up to the full value of these amounts. The Court, therefore, required the execution of mortgages forthwith to create liens on these properties in favor of U.S. Bancorp as a requirement for the use of cash collateral. The Court *sua sponte* further ordered that U.S. Bancorp is permitted to inspect the property of the Debtor during normal business hours and in a manner that does not interfere with the business operation of the Debtor. Likewise, the Court *sua sponte* ordered the Debtor to file with U.S. Bancorp and with the Court daily detailed reports, which reflect the amount of cash collateral used for inventory and overhead expenses, the amount of money deposited with U.S. Bancorp and details of its business and cash transactions.

At the final hearing on July 15, 1985, the Debtor and U.S. Bancorp represented to the Court that they entered into a stipulation in which the Debtor agreed to the immediate appointment of a trustee. Moreover, the Debtor and U.S. Bancorp agreed that there will be no further use of the cash collateral of U.S. Bancorp as of July 15, 1985. The Debtor, however, represented to the Court that they were unable to arrive at an agreement with respect to the validity, enforcibility and/or advisability of the Court's July 10, 1985 ruling concerning the additional collateral which was to be given to U.S. Bancorp. It is important to note that the Debtor specifically stated that the Debtor and U.S. Bancorp "are prepared to argue that issue before the Court without the necessity of any kind of evidentiary hearing." *A fortiori*, the Court, with respect to the issue of additional collateral, must base its decision on its findings at the preliminary hearing.

This memorandum decision and order concerns the issue of the additional collateral which this Court ordered as a prerequisite to the Debtor's use of U.S. Bancorp's cash collateral until the final hearing. The Debtor asserts that given the fact that pursuant to the stipulation, the use of U.S. Bancorp's cash collateral terminates as of July 15, 1985, there is no need for additional collateral to provide adequate protection. In contrast, U.S. Bancorp contends that the use of its cash collateral until the final hearing was conditioned upon the additional collateral.

■ 11 U.S.C. § 363(c)(3) provides that at a preliminary hearing, "the court may authorize ... the use [of the collateral] only if there is a reasonable likelihood that the trustee will prevail at the final hearing...." To determine whether there is a reasonable likelihood that the trustee, the Debtor-in-Possession in this case, will prevail at the final hearing, the Court must necessarily evaluate the evidence presented at the preliminary hearing according to the standards established for the use of cash collateral under the Bankruptcy Code. It is well established that a debtor is entitled to use cash collateral upon proof of adequate protection. *In re Harrington & Richardson, Inc.*, 48 B.R. 431, 433 (Bankr. Mass. 1985). In particular, 11 U.S.C. § 361 prescribes three methods of providing adequate protection. First, subsection (1), in part, provides for cash payment or periodic cash payments to the extent that the use under Section 363 results in a decrease in the value of an entity's interest in such property. Second, subsection (2), in part, provides for an additional or replacement lien to the extent that such use results in a decrease in the value of an entity's interest in such property. Third, subsection (3) provides for the granting of other relief, other than the granting of compensation as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

As stated in Collier's, the "purpose of section 361 is to illustrate the means by which adequate protection may be provided and, as such, it is not meant to be mandatory...." 2 Collier on Bankruptcy ¶ 361.-01[1] (15th ed. 1985). The methods of providing adequate protection are illustrative

"but are neither exclusive nor exhaustive." *In re Sheehan*, 38 B.R. 859, 864 (Bankr. S.D.1984). The concept of adequate protection must be determined on a case by case basis and allows "maximum flexibility in structuring a proposal for adequate protection." *In re Martin*, 761 F.2d 472, 474 (8th Cir. 1985) (*quoting In re American Mariner Industries, Inc.*, 734 F.2d 426, 435 (9th Cir. 1984)).

■ The legislative history of adequate protection clearly provides that "secured creditors should not be deprived of the benefit of their bargains." H.R.Rep. No. 595 at 339, 1978 U.S. Code Cong. & Adm. News at 6295. And, this protection must result in the indubitable equivalent of a secured creditor's interest in the property. *In re Murel Holding Corp.*, 75 F.2d 941 (2d Cir. 1935); 11 U.S.C. § 361(3).

Finally, with respect to the issue of adequate protection, it is undisputed that the Debtor in possession has the burden of proof. 11 U.S.C. § 363(*o*). Thus, in the instant case, it was incumbent upon the Debtor to prove to this Court that there was a reasonable likelihood that it would prevail at the final hearing with respect to the issue of whether U.S. Bancorp was adequately protected.

■ Having reviewed the documents and files in this case and having considered the evidence presented as well as the arguments of counsel, the Court reaffirms its Order of July 10, 1985, requiring additional collateral for the protection of U.S. Bancorp for the use of its cash collateral until the final hearing on the matter. First, the Court notes that the Debtor with the acquiescence of Damore argued strenuously to the Court that U.S. Bancorp is adequately protected based upon the value of the inventory, accounts receivables, the lease of the premises, Damore's residence, the interest in the holding company and the equipment. In effect, the Debtor and John Damore offered these properties as collateral to adequately protect U.S. Bancorp in exchange for the continued use of U.S. Bancorp's cash collateral.

Second, this Court would not have authorized the use of the cash collateral of U.S. Bancorp without the additional collateral. Without the additional collateral, the Court would have found that there was no equity. In particular, the Court notes that without the additional collateral, the value of the remaining assets is somewhere in the neighborhood of 3.0 million dollars. In contrast, the debt to U.S. Bancorp is 4.7 million. It is evident that U.S. Bancorp would not have been adequately protected. As such, the Court would have been unable to find that there was a reasonable likelihood that the Debtor would have been able to prevail at the final hearing. Without such a finding, the Court would not have permitted the Debtor's continued use of U.S. Bancorp's cash collateral.

Third, although the burden was on the Debtor to prove adequate protection, the Debtor failed to provide any method of providing adequate protection except for its assertion that a sufficient equity cushion exists. For example, in the case of *In re Sheehan*, the debtor proposed the following methods, among others, of adequate protection: (1) a detailed budget, (2) replacement liens, (3) payment of interest on cash collateral, (4) insurance, (5) services of an experienced certified accountant, (6) the right to reasonable inspection of the debtor's premises and books, (7) a new professional management staff. 38 B.R. at 859. The Court notes that at the preliminary hearing, the Debtor failed to offer any such methods of adequate protection. Instead, the Debtor relied merely upon an assertion that a sufficient equity cushion exists.

Fourth, U.S. Bancorp presented sufficient evidence at the preliminary hearing to cast doubt upon the Debtor's assertion that a sufficient equity cushion exists. For example, U.S. Bancorp presented evidence with respect to a discrepency in the amount of approximately $1,068,521.92, concerning reports of inventory which were provided to U.S. Bancorp. In particular, U.S. Bancorp presented a House Inventory Report ("Exhibit A") which states that the inventory as of July 5, 1985 is $2,534,614.53. In

addition, U.S. Bancorp presented a House Inventory Report ("Exhibit B") which provides that the inventory as of that same day is $1,466,092.61. Because evidence was presented at the hearing of possible dishonesty, mismanagement and fraud, the Court has questions as to the actual value of the collateral. For this reason, the Court has utilized the flexibility permitted by Section 361(3) to fashion and to grant relief as will result in the realization of U.S. Bancorp's indubitable equivalent of its interest in the cash collateral. In this case, the Court ruled that U.S. Bancorp was entitled to liens to the extent of the value of the properties offered by the Debtor and Damore as adequate protection for the use of U.S. Bancorp's cash collateral.

Fifth, the Debtor, at the July 15, 1985 hearing, inquired whether U.S. Bancorp is entitled to a lien on all the property offered by the Debtor for adequate protection or only to the extent that there is established a diminution in the value of the collateral. The Court reaffirms its ruling that U.S. Bancorp is entitled to the full value of the properties offered by the Debtor and Damore for adequate protection because the Court based its ruling on § 361(3) which gives the Court broad discretion and flexibility to fashion relief based upon the unique facts of each case. As mentioned previously, evidence of possible misrepresentation, mismanagement and fraud was presented at the preliminary hearing. As such, the Court has questions as to the actual value of the assets. Based upon the facts of this case, the Court required liens on the full extent of the value of the properties offered by the Debtor and Damore as a prerequisite for the use of cash collateral until the final hearing on the matter to adequately protect U.S. Bancorp during this period.

Finally, in the case of *In re Martin*, 761 F.2d 472 (8th Cir. 1984), the Eight Circuit Court of Appeals stated that in any given case, the bankruptcy court must necessarily

(1) establish the value of the secured creditor's interest, (2) identify the risks to the secured creditor's value resulting from the debtor's request for use of cash collateral, and (3) determine whether the debtor's adequate protection proposal protects value as nearly as possible against the risks to that value consistent with the concept of indubitable equivalence.

*Id.* at 477.

Based upon the evidence submitted at the preliminary hearing, the Court estimates that, without the additional collateral, the value of the secured creditor's interest is in the neighborhood of approximately three million dollars. Given the discrepancies in the Debtor's testimony with respect to the value of the collateral and the lack of equity, the Court finds that the risk to U.S. Bancorp is substantial. Moreover, this Court finds that without the additional security, the Debtor has failed to provide adequate protection which protects value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence. This Court finds that, without the additional liens to the extent of the value of the properties offered by the Debtor and Damore for adequate protection, there would not have been a reasonable likelihood that the Debtor will prevail at the final hearing. As such, the Court in such a situation would not have permitted the Debtor to use U.S. Bancorp's cash collateral.

After having received the benefits of the use of the cash collateral of U.S. Bancorp, the Debtor now asserts that the additional collateral is not necessary. The Debtor, however, ignores the fact that the prerequisite to the use of the cash collateral is the additional collateral.

IT IS HEREBY ORDERED that additional collateral to the extent of the value of the properties offered by the Debtor and Damore be given in favor of U.S. Bancorp by 4:00 p.m. on July 17, 1985. In particular, mortgages shall be executed in favor of U.S. Bancorp (1) of Damore's residence, a description of which is attached hereto as Exhibit "A" and (2) of the leased premises a description of which is attached hereto as

Exhibit "B". If the description of the properties in Exhibits "A" and "B" are not the proper description of the properties offered by the Debtor and Damore as adequate protection at the preliminary hearing, then this Court grants the Debtor leave to file the proper descriptions. In addition, liens shall be created on the motor vehicles in favor of U.S. Bancorp.

EXHIBIT A

STATUS TITLE REPORT

(No Liability Hereunder)

---

Title Guaranty of Hawaii, Inc. hereby reports that title to the land described in Schedule "C" attached hereto is vested in:

-JOHN F. DAMORE–

(husband of Elaine Damore)

(as Tenant in Severalty)

(as Lessee)

Subject only to those matters set forth in Schedule "B" hereof. This report is to the hour of 8:00 o'clock A. M. on July 11, 1985.

Title Guaranty of Hawaii,
Incorporated

SCHEDULE B

1. Real Property Taxes for the Fiscal Year July 1, 1985 – June 30, 1986. (see Exhibit "A")

   Tax Key: 3–9–28–20        Area assessed: 29,190 sq. ft.

2. Reservation in favor of the State of Hawaii of all mineral and metallic mines.

3. Location of the seaward boundary in accordance with the laws of the State of Hawaii and shoreline setback line in accordance with County regulation and/or ordinance and its effect, if any, upon the area of the land described herein.

4. A 15-foot building setback line as shown on File Plan No. 750 and on map attached to Lease referred to in Schedule C.

5. Terms, agreements, reservations, covenants, conditions and provisions contained in Lease referred to in Schedule C.

6. MORTGAGE

   MORTGAGOR : JOHN F. DAMORE, husband of Elaine Damore

   MORTGAGEE : HONOLULU TRUST COMPANY, LTD.

   DATED : April 22, 1970

   RECORDED : Liber 6978   Page 72

   AMOUNT : $75,000.00

   THE ABOVE MORTGAGE WAS ASSIGNED

   TO : PACIFIC GUARDIAN LIFE INSURANCE COMPANY, LIMITED

   DATED : August 13, 1970

   RECORDED : Liber 7145   Page 289

7. INSTRUMENT : JUDGMENT

   PLAINTIFF : CROWN PROPERTIES, INC.

   DEFENDANT : INTERNATIONAL MANAGEMENT CORPORATION, JOHN F. DAMORE and ELAINE DAMORE

| DATED | : | January 28, 1980 |
|---|---|---|
| AMOUNT | : | $368,603.45 |
| FILED | : | Circuit Court of the First Circuit, State of Hawaii, Civil No. 48089, on January 29, 1980 |
| RECORDED | : | Liber 14450 Page 659 in the Office of the Registrar of Conveyances at Honolulu on January 29, 1980 |

8. MORTGAGE

| MORTGAGOR | : | JOHN F. DAMORE, husband of Elaine Damore |
|---|---|---|
| MORTGAGEE | : | HAWAII THRIFT & LOAN, INCORPORATED, a Hawaii corporation |
| DATED | : | May 28, 1982 |
| RECORDED | : | Liber 16380 Page 361 |
| AMOUNT | : | $182,124.00 |

By SUBORDINATION AGREEMENT dated May 21, 1982, recorded in Liber 16380 at Page 375, the foregoing Judgment recorded in Liber 14450 at Page 659 was subordinated to the lien of said above Mortgage recorded in Liber 16380 at Page 361.

9. MORTGAGE, SECURITY AGREEMENT AND FINANCING STATEMENT

| MORTGAGOR | : | JOHN F. DAMORE, husband of Elaine Damore |
|---|---|---|
| BORROWER | : | HAWAIIAN INDUSTRIAL PROPERTIES |
| MORTGAGEE | : | FIRST INTERSTATE BANK OF HAWAII, a Hawaii banking corporation |
| DATED | : | February 7, 1984 |
| RECORDED | : | Liber 17649 Page 398 |
| AMOUNT | : | $2,000,000.00 |

By SUBORDINATION OF JUDGMENT dated May 8, 1984, recorded in Liber 17906 at Page 354, the foregoing Judgment recorded in Liber 14450 at Page 659 was subordinated to the lien of said above Mortgage recorded in Liber 17649 at Page 398.

10. MORTGAGE AND FINANCING STATEMENT

| MORTGAGOR | : | JOHN F. DAMORE, husband of Elaine Damore |
|---|---|---|
| MORTGAGEE | : | U. S. BANCORP FINANCIAL, INC., an Oregon corporation |
| DATED | : | February 13, 1985 |
| RECORDED | : | Liber 18468 Page 247 |
| AMOUNT | : | $400,000.00 |

SCHEDULE C

| LEASE NO. | : | 18,792 |
|---|---|---|
| LESSOR | : | THE TRUSTEES UNDER THE WILL AND OF THE ESTATE OF BERNICE PAUAHI BISHOP, DECEASED |
| LESSEE | : | JOHN F. DAMORE, husband of Elaine Damore |
| TENANCY | : | as Tenant in Severalty |
| DATED | : | April 15, 1970 |
| RECORDED | : | Liber 6978 Page 64 |
| TERM | : | 55 years commencing April 22, 1970 |

Said lease demising the following described premises:

All of that certain parcel of land situate (being part of R. P. 4475, L. C. Aw. 7713, Apana 30 to Victoria Kamamalu) at Maunalua, Honolulu, City and County of Honolulu, State of Hawaii, being LOT NUMBER 22, of the "MAUNALUA BAY VIEW LOTS, UNIT I", as shown on File Plan Number 750, filed in the Bureau of Conveyances of the State of Hawaii, and containing an area of 29,190 square feet, more or less.

07/12/85     " EXHIBIT A     JOHN CONRAD
                                       22/MAUNALUA BAY VI

## STATEMENT OF ASSESSED VALUES AND REAL PROPERTY TAXES DUE

STATUS RP

1ST      DIVISION     FILE NO. 105321     DATE 07/11/85

Name of Owner (s) *Bishop Est.*

Leased To *Daniero, John F*

Tract "MAUNALUA BAY VIEW LOTS     Lot No. 22     Block

Description SUBDIVISION, UNIT I", FP 750     Area 29,190 SQ. FT.

Location MAUNALUA, HONOLULU, OAHU     Area Assessed

### TAX KEY

| ZONE | SECTION | PLAT | PARCEL |
|------|---------|------|--------|
| 3 | 9 | 028 | 020 |

CLASS 1          HPR NO.

ASSESSED VALUES:     YEAR: 19 85

This certifies that the records of this division show the assessed values and taxes on the property designated by Tax Key shown above are as follows:

BUILDING .......................................... $ 292,026

EXEMPTION ......................................... $

NET VALUE.......................................... $

LAND............................................... $ 623,911

EXEMPTION ......................................... $

NET VALUE.......................................... $

TOTAL NET VALUE................................... $ 915,937

CURRENT YEAR TAXES:               AMOUNT DUE

1st INSTALLMENT (DELINQUENT AFTER Aug. 20, 1985 ) $ 3091.29

2nd INSTALLMENT (DELINQUENT AFTER Feb. 20, 1986 ) $ 3091.28

TOTAL TAXES: $ 6182.57

☐ THERE ARE DELINQUENT TAXES

(SEE ATTACHED STATEMENT FOR DELINQUENT AMOUNTS)     1981 TO 1985

| | |
|---|---|
| 2,709.58 | PAID |
| 2,709.58 | IN |
| 5,491.16 | FULL |

7/11 arr

*Hilary Hutchison    Justina Schroeder*
SIGNATURE

DATE

## TITLE GUARANTY OF HAWAII
INCORPORATED

EXHIBIT B

STATUS TITLE REPORT

(No Liability Hereunder)

-------------------------------------------------------------------------------------------------------

Title Guaranty of Hawaii, Inc. hereby reports that title to the land described in Schedule "C" attached hereto is vested in:

–HAWAIIAN INDUSTRIAL PROPERTIES–

(a Hawaii limited partnership)

(as SubLessee)

Subject only to those matters set forth in Schedule "B" hereof. This report is to the hour of 8:00 o'clock A. M. on July 28, 1985.

Title Guaranty of Hawaii,
Incorporated

SCHEDULE B

1. Any and all Real Property Taxes that may be due and owing.

   Tax Key: 1–1–4–29 (1)

2. A 20-foot building setback line over and across Lot 946, as shown on Maps 196, 198 and 206, filed with Land Court Application No. 1074.

3. Easement "187" (10 feet wide) for sanitary sewer purposes, over and across Lot 946 as shown on Maps 196 and 206, as set forth by Land Court Order No. 18661, filed January 19, 1961.

4. Grant in favor of the City and County of Honolulu dated August 30, 1983, filed as Land Court Document No. 1279471; granting an easement to construct, reconstruct, install, maintain, operate, repair and remove an underground sewer pipe line or pipe lines, etc., as part of a sewer system, through, under and across said Easement "187".

5. LEASE

   | | | |
   |---|---|---|
   | LESSOR | : | LOYALTY DEVELOPMENT COMPANY, LTD., a Hawaii corporation |
   | LESSEE | : | INDUSTRIAL INVESTORS, INC., a Hawaii corporation |
   | DATED | : | February 12, 1962 |
   | FILED | : | Land Court Document No. 286244 |
   | TERM | : | From January 1, 1962 to and including December 30, 2012 |
   | CONSENT | : | Given by Kan Jung Luke, et al., by instrument dated February 12, 1962, filed as Document No. 286245 |

   Statement of Lessee dated November 28, 1979, filed as Document No. 986181, made by Industrial Investors, Inc., a Hawaii corporation, re: Lease filed as Document No. 286244, besides other leases, has not been modified, is in full force and effect, etc.

   Rent Redetermination Agreement dated December 30, 1982, effective as of January 1, 1983, filed as Document No. 1151001, re: to establish rents in said Lease filed as Document No. 286244. Consent given by Hawaiian Industrial Properties, a Hawaii registered limited partnership, by instrument dated January 24, 1983, filed as Document No. 1151004.

   Said lease subject to the following:

   AGREEMENT OF SALE

   | | | |
   |---|---|---|
   | VENDOR | : | INDUSTRIAL INVESTORS, INC., a Hawaii corporation |
   | VENDEE | : | HAWAIIAN INDUSTRIAL PROPERTIES, a Hawaii registered limited partnership |

```
DATED     :  December 30, 1982
FILED     :  Land Court Document No. 1151002
AMOUNT    :  $70,500.00
CONSENT   :  Given by Kan Jung Luke and Lillian Tom Loo, general
             partners of Loyalty Investments, a Hawaii registered limit-
             ed partnership, and New England Mutual Life Insurance
             Company by instrument dated December 30, 1982, filed as
             Document No. 1151003
```

Reference is made to said instrument for terms, conditions, restrictions, reservations, provisions, etc.

6. MORTGAGE

```
MORTGAGOR  :  KAN JUNG LUKE, husband of Beatrice Lum Luke, and
              LILLIAN TOM LOO, unmarried, as General Partners of
              Loyalty Investments, a Hawaii registered limited partner-
              ship
MORTGAGEE  :  NEW ENGLAND MUTUAL LIFE INSURANCE COMPA-
              NY, a Massachusetts corporation
DATED      :  December 13, 1979, effective December 17, 1979
FILED      :  Land Court Document No. 986175
AMOUNT     :  $4,500,000.00 – covers the fee simple interest in the prem-
              ises described in Schedule C besides other land
```

By COLLATERAL ASSIGNMENT OF LEASE OR LEASES, dated December 13, 1979, effective December 17, 1979, filed as Document No. 986178, KAN JUNG LUKE, husband of Beatrice Lum Luke, and LILLIAN TOM LOO, unmarried, General Partners of Loyalty Investments, a Hawaii registered limited partnership, assign to NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, a Massachusetts corporation, the entire Lessor's interest in and to Lease Document No. 286244, together with all rents, income and profits arising from said Lease, besides other leases, as security for the repayment of Promissory Note dated December 13, 1979, in the amount of $4,500,000.00.

As to Documents Nos. 986175 and 986178: CONSENT BY MORTGAGEE AND ASSUMPTION AGREEMENT dated March 21, 1983, effective March 22, 1983, filed as Document No. 1159235, made by NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY.

7. Terms, agreements, reservations, covenants, conditions and provisions contained in Sublease referred to in Schedule C.

8. Reservation contained in said Sublease filed as Document No. 286246, as amended, to-wit:

"Excepting and Reserving therefrom all such rights and easements as the Lessor or Prime Lessee in its sole discretion may from time to time require for overhead wire lines and poles or underground lines, pipes and appurtenances thereto for drains, sewers, water, utilities and any other purposes, services and substances whatsoever over, across and under any portions of said premises lying between a street boundary thereof and any setback line along such boundary as shown on said map (herein called the "service area") or any easement shown on said map, said reserved rights to be exercised in such manner as to cause the least practicable interference with the use and occupancy of said premises."

9. Any mortgage which may hereafter be made by Kan Jung Luke and Lillian Tom Loo to any mortgagee, as provided in said Sublease, as amended, to-wit: "This Lease and the leasehold interest of the Lessee in said premises shall be subject and subordinate to the lien of any mortgage (and each such mortgage if more than one) made by the owners, as mortgagors, in favor of Great Southern, as mortgagee, or any other mortgagee, irrespective of the amount of indebtedness or other obligation secured thereby or the time, whether heretofore or

hereafter, when such indebtedness or obligation shall have been or shall be incurred, and each such mortgage shall have such priority and shall be given effect as though it had been duly executed, delivered and filed of record in said Office of the Assistant Registrar, and all indebtedness and other obligation of the owners secured thereby had been incurred and subsisting, prior to the earliest date of the execution, delivery and filing of record in said Office of the Assistant Registrar of the Prime Lease and this lease; provided, however, that the foreclosure of any such mortgage, or the voluntary conveyance of said premises in lieu of foreclosure, or the pursuit of any other remedy of such mortgagee for any default by the owners under such mortgage, shall not terminate or otherwise affect this lease or any rights of the lessee hereunder if the lessee shall at all times faithfully observe and perform its covenants herein contained."

10. By ASSIGNMENT OF INCOME dated January 14, 1974, filed as Document No. 665074, CERTIFIED CORPORATION assigns to DYWER–CURLETT, INC., all rentals and other income from the said Sublease filed as Document No. 286246, as further security for the repayment of that certain Mortgage filed as Document No. 665073.

Said Assignment of Income was assigned to CALIFORNIA–WESTERN STATES LIFE INSURANCE COMPANY, a California corporation, by ASSIGNMENT dated January 14, 1974, filed as Document No. 665075.

11. MORTGAGE, SECURITY AGREEMENT AND FINANCING STATEMENT

| | | |
|---|---|---|
| MORTGAGOR | : | HAWAIIAN INDUSTRIAL PROPERTIES, a Hawaii limited partnership |
| MORTGAGEE | : | FIRST INTERSTATE BANK OF HAWAII, a Hawaii corporation |
| DATED | : | February 7, 1984 |
| FILED | : | Land Court Document No. 1218944 |
| AMOUNT | : | $2,000,000.00 |
| CONSENT | : | Given by Industrial Investors, Inc., a Hawaii corporation, by instrument dated February 7, 1984, filed as Document No. 1218945 |

By SUBORDINATION OF MORTGAGE dated January 8, 1985, filed as Document No. 1277896, that certain Mortgage filed as Document No. 1218944 was subordinated to the lien of that certain Mortgage and Security Agreement, filed as Document No. 1277895.

12. Reservation contained in Deed dated March 18, 1983, filed as Document No. 1157835.

13. SUB–SUBLEASE

| | | |
|---|---|---|
| SUBLESSOR | : | HAWAIIAN INDUSTRIAL PROPERTIES, a Hawaii limited partnership |
| SUBLESSEE | : | CERTIFIED CORPORATION, a Hawaii corporation |
| DATED | : | May 1, 1980 |
| FILED | : | Land Court Document No. 1028793 |
| TERM | : | 4 years commencing May 1, 1980, and terminating on the last day of April, 1984; said Sub-Sublease being extended in accordance with its terms to December 31, 1992 |

Said Sub-Sublease is subject to the following:

(A) FIRST SUB–SUBLEASEHOLD MORTGAGE

| | | |
|---|---|---|
| MORTGAGOR | : | CERTIFIED CORPORATION, a Hawaii corporation |
| MORTGAGEE | : | HAWAII THRIFT & LOAN, INCORPORATED, a Hawaii corporation |
| DATED | : | January 3, 1985 |

FILED      : Land Court Document No. 1277894

AMOUNT   : $700,000.00

(B) SUBORDINATION OF SUB–SUBLEASE dated January 3, 1985, filed as Document No. 1277895A; CERTIFIED CORPORATION, a Hawaii corporation, "Sub-Sublessee", acknowledges, promises and agrees that the foregoing Sub-Sublease shall be and is subject and subordinate to that certain Mortgage and Security Agreement filed as Document No. 1277895.

(C) CIVIL NO. 85–1063 (pending), Circuit Court of the First Circuit, State of Hawaii; FIRST INTERSTATE BANK OF HAWAII, a Hawaii banking corporation, Plaintiff (Attorney(s) – Charles W. Crumpton), vs. HAWAIIAN INDUSTRIAL PROPERTIES, a Hawaii limited partnership, et al.; re: foreclosure of Mortgage filed as Document No. 1218944 (besides other mortgages).

14. MORTGAGE AND SECURITY AGREEMENT

MORTGAGOR  : HAWAIIAN INDUSTRIAL PROPERTIES, a Hawaii limited partnership

MORTGAGEE  : HAWAII THRIFT & LOAN, INCORPORATED, a Hawaii corporation

DATED      : January 3, 1985

FILED      : Land Court Document No. 1277895

AMOUNT   : $700,000.00

CONSENT AND AGREEMENT dated January 3, 1985, filed as Document No. 1277897, by INDUSTRIAL INVESTORS, INC., a Hawaii corporation.

15. MORTGAGE AND FINANCING STATEMENT

MORTGAGOR  : HAWAIIAN INDUSTRIAL PROPERTIES, a Hawaii limited partnership

MORTGAGEE  : U. S. BANCORP FINANCIAL, INC., an Oregon corporation

DATED      : February 13, 1985

FILED      : Land Court Document No. 1284821

Mortgaging said Sublease to secure the repayment of all moneys advanced by the Mortgagee to SEAWAY DISTRIBUTION CORPORATION, CERTIFIED CORPORATION, LAS VEGAS DISTRIBUTING COMPANY and THE BEVWAY CORPORATION, "Borrower", according to the terms of that certain Amendment Agreement dated February 13, 1985, made by and among the Borrower, the Mortgagor, John Damore, and the Mortgagee, up to a maximum amount of $400,000.00, etc.

–N O T E:–

A. INSTRUMENT : DEFAULT JUDGMENT

PLAINTIFF   : EMPLOYER'S OVERLOAD (Attorney(s) – Gary Y. Shigemura and Camille A. L. Chun-Hoon)

DEFENDANT  : CERTIFIED CORPORATION

DATED      : November 14, 1984

AMOUNT   : $207.13

FILED      : Circuit Court of the First Circuit, State of Hawaii, Civil No. 84–0761, on November 14, 1984

RECORDED   : Liber 18282 Page 498 in the Office of the Registrar of Conveyances at Honolulu on November 21, 1984

(Not noted on Transfer Certificate of Title No. 274,200)

B. Owner's Transfer Certificate of Title No. 247,200 located at the Office of the Assistant Registrar of the Land Court, State of Hawaii, as of June 28, 1985.

SCHEDULE C

SUBLEASE

| | | |
|---|---|---|
| SUBLESSOR | : | INDUSTRIAL INVESTORS, INC., a Hawaii corporation |
| SUBLESSEE | : | YOUNG INVESTMENT, INC., a Hawaii corporation |
| DATED | : | February 16, 1962 |
| FILED | : | Land Court Document No. 286246 |
| TERM | : | Commencing on April 1, 1962 to and including December 29, 2012 |
| CONSENT | : | Given by Kan Jung Luke, et al., and Loyalty Development Company, Ltd., by instrument dated February 16, 1962, filed as Document No. 286247 |

By instrument dated May 28, 1970, filed as Document No. 507260, LOYALTY DEVELOPMENT COMPANY, LIMITED, Lessor, waives the limitation of the use of a portion of the original service area as mentioned in the above Lease. Consent given by Kan Jung Luke, et al., by instrument dated May 28, 1970, filed as Document No. 507261.

ABOVE SUBLEASE, AS AMENDED, BY MESNE ASSIGNMENTS AS-SIGNED

| | | |
|---|---|---|
| ASSIGNOR | : | DISTRIBUTION MANAGEMENT CORPORATION, a Delaware corporation |
| ASSIGNEE | : | HAWAIIAN INDUSTRIAL PROPERTIES, a Hawaii limited partnership |
| DATED | : | February 15, 1980 |
| FILED | : | Land Court Document No. 1010438 |
| CONSENTS | : | Given by Industrial Investors, Inc., a Hawaii corporation, by instrument dated April 15, 1980, filed as Document No. 1010439, and by Kan Jung Luke, husband of Beatrice Lum Luke, and Lillian Tom Loo, unmarried, formerly copartners doing business as Loyalty Investments and presently general partners of Loyalty Investments, a registered limited partnership, by instrument dated April 29, 1980, filed as Document No. 1010440 |

Said Sublease, as amended, demising the following described premises:

All of that certain parcel of land situate at Moanalua, Honolulu, City and County of Honolulu, State of Hawaii, described as follows:

LOT 946, area 142,920.0 square feet, as shown on Map 206, filed in the Office of the Assistant Registrar of the Land Court of the State of Hawaii with Land Court Application No. 1074 of the Trustees under the Will and of the Estate of Samuel M. Damon, deceased;

Together with a right of way appurtenant to the premises described hereinbefore for roadway purposes to be used in common with all others entitled thereto over and across roadway Lot 940–A as shown on Map 608 and Lots 1032–A and 1033–A as shown on Map 561, both maps filed with Land Court Application No. 1074; provided, however, whenever all or any part of said roadway lots or lot are conveyed or dedicated to and accepted by the State of Hawaii or other governmental authority for use as public roadways, the said right of way over and across said Lots or parts thereof dedicated and accepted shall automatically terminate.

Being a portion of the premises described in Transfer Certificate of Title No. 247,200 issued to K. J. L. Associates, a Hawaii registered limited partnership.

Together with a perpetual easement appurtenant to Lot 946 for the drainage of said lot into a drainage ditch or other drainage facilities heretofore or hereafter to be constructed by the State of Hawaii, over, across, or under Lots B–361–D, B–361–E, B–131, B–324–C, B–230, B–229, B–123–A, B–200, B–199, B–121–A, B–174, B–172, A–101, A–117–A, A–99, A–90, A–116–A, A–74, A–113–A, A–46, A–47, A–87, A–92–B, A–86–B, A–75–B, A–114–A, A–66, A–57, A–36–G–2 and A–36–H–1, as granted by that certain Land Court Document No. 176272.