**In re Darrel L. SAPP and Bonita S. Sapp, Debtors.**

**Bankruptcy No. 87–03826–C.**

United States Bankruptcy Court, W.D. Missouri, C.D.

Dec. 9, 1987.

Norman W. Lampton, Columbia, Mo., for ITT.

Fred Dannov, Columbia, Mo., for debtors.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

Darrel Lynn Sapp and Bonita Sue Sapp, hereinafter debtors, filed their Chapter 7 petition on September 3, 1987. On September 15, 1987, debtors filed two motions for avoidance of purported non-possessory and non-purchase money liens on their household goods under 11 U.S.C. § 522(f). The liens were held by two finance companies. Avco Financial Services of Rolla, Inc. made no answer and defaulted but ITT Financial Services, hereinafter ITT, denied the allegations of debtors' motion and claimed that the goods were not exempt and were not household goods. At the hearing, counsel for both parties announced that an evidentiary hearing was not necessary and that the parties had a strictly legal question to be ruled by the Court, involving a change in the law of the State of Missouri. Counsel for ITT then introduced a duly exemplified copy of House Bill 484 as Codified in Revised Statute Supplement 1987 to now be § 513.436. The entire exemplified House Bill 484 is appended to this opinion, as a substantial portion of this opinion is intelligible only after perusal of said legislation.

The pertinent provision found on page 564, consists of one sentence and, in lines 1 through 5 following line 139 states:

"Section 1. No property upon which a debtor has voluntarily granted a lien shall, to the extent of the balance due on the debt secured thereby, be subject to the provisions of Chapter 513, R.S.Mo., or be exempt from attachment or execution".

Afficiandos of bankruptcy history will recall that § 522 of the 1978 Code created the so called "federal exemptions" as set out in § 522(d)(1 through 11) allowing the debtor to exempt, inter alia, all household goods on the basis of not more than $200.00 per item with a cap of $4,000.00, although the aforesaid total limitation was not enacted until 1984 in the so called "consumer amendments". While creditors in states which provided less extensive exemptions than those contained in § 522(d) were extremely unhappy at this turn of events, little did they realize that a majority of bankruptcy acts prior to the 1898 Act had provided for certain federal exemptions, albeit they were generally far less generous than those provided by state law. Congress provided a "safety valve" for the states in § 522(b)(1) and through date of November 20, 1986, thirty-six of the sovereign states had elected to "opt out" of the federal exemptions as said section provided. The State of Missouri exercised said option in 1982 and § 513.427 Mo.R.S. eliminates the federal exemptions for residents of the state. At the same time the legislature amended § 513.430 Mo.R.S. to provide the updated quality and quantum of exemptions in personal property thereafter available to residents. The pertinent portion of § 513.430 Mo.R.S. reads as follows:

"The following property shall be exempt from attachment and execution to the extent of any person's interest therein: (1) Household furnishings, household goods, wearing apparel, appliances, books, animals, crops or musical instruments that are held primarily for personal, family or household use of such person or a dependent of such person, not to exceed one thousand dollars in value in the aggregate; ..."

Thus for five years, Missouri residents have uniformly exempted one thousand dollars of household goods and furniture. In point of practice, one wonders if future sociologists will conclude that all Missouri families possessed basically the same quantum of household necessities, since their claim for exemption was so uniform.

Just as uniformly as they claimed the household goods exemption, parties in Missouri filing for bankruptcy have availed themselves of the provisions of 11 U.S.C. § 522(f) and thus avoided all non-purchase money and non-possessory liens on the aforesaid household goods provided that the liens were created after the November, 1978, enactment date of the Bankruptcy Reform Act of 1978. *United States v.*

*Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982). The record of the hearings held by the Brookings Commission and early hearings before the House and Senate were replete with "horror stories" of finance companies forcing reaffirmations of vastly inflated debts by threats of repossession of the household goods or "sticks" of debtors who had no credit available to replace their basic living tools and who had granted liens on same previously.

Congress had passed § 522(f) as the cornerstone of its avowed intent to provide indigent debtors with a *fresh start,* just as Congress had spelled out in § 522(d) what it considered to be the basic minimums necessary to supply the fresh start. Nevertheless, the § 522(b) provision allowing the individual states to set their own exemptions, also has been held to allow the states to eliminate the avoidance powers under § 522(f) if that were the will of the state lawmaking body. *In re Pine,* 717 F.2d 281 (CA 6, 1983).

Based on that background, the Court must construe the effect of § 513.436, Mo. R.S., effective July 15, 1987, passed by the 84th General Assembly of the State of Missouri. The Court determines that it does not change the prior status of lien avoidance.

In reaching that conclusion the Court does not seek to revisit the past battles of whether state action (opting out) can override any provision of § 522 other than subsection (d) because it seems clear that that issue has been resolved in favor of the creditors by at least two opinions by two different circuits. See *In re Pine,* 717 F.2d 281 (CA 6, 1983) and *Matter of McManus,* 681 F.2d 353 (CA 5 1982). Nor does the Court seek to trek through the swamp of whether state legislation which becomes effective on July 15, 1987, has the power to change the terms of a contract entered into on January 30, 1987, the date of the ITT lien, with the attendant questions of substantive, procedural or ex post facto laws. Such an analysis is both narrow and unnecessary in regard to this legislation which is so broad and far reaching. For indeed, even if the Court should reach the conclusion that the legislation could affect only bargains struck after its passage date, this would still mean that all non-possessory and non-purchase money liens granted after July 15, 1987, would still not be avoidable under this new legislation; thereby negating the Congressional intent as expressed in § 522(f) and the avowed desire to create a "fresh start".

Instead this Court chooses to base its negative conclusion to the issue it posed on a constitutional basis. Not on a federal constitutional basis, the Court hastens to add but instead on a state constitutional basis. This is emphasized because this Court has previously indicated its doubts as to the propriety of a Bankruptcy Court (or any Court, constituted as this one is) declaring any Congressional enactment to be unconstitutional. And while this Court has some reluctance to so brand the product of the infinite wisdom of the duly elected lawmakers of the State of Missouri, it reluctantly feels that it must do so in this particular instance because this particular piece of legislation will have extremely broad ramifications and will visit severe economic problems upon debtors without the financial ability to afford legal talent to carry the fight to the higher courts on an individual basis. More succinctly stated, if this Court is in error, ITT can well afford to prove that error but the Sapps cannot.

Philosophical observations aside, the reason § 513.436 Mo.R.S. is unconstitutional is found in Article 3, § 23 of the Constitution of 1945 of the State of Missouri. That section reads:

"Section 23.  *Limitation of scope of bills—contents of title—exceptions*

Section 23.  No bill shall contain more than one subject which shall be clearly expressed in its title, except bills enacted under the third exception in Section 37 of this article and general appropriation bills, which may embrace the various subjects and accounts for which moneys are appropriated".

Nor was that a new section enacted originally in 1945. It follows precisely the intent of Article 4, Section 28 of the Constitu-

tion of 1875, which in turn followed Article 4, Section 32 of the Constitution of 1865. The founding fathers of this state obviously intended that each piece of legislation passed by the state's lawmakers would be clearly labeled, clearly understood and clearly denominated as it was introduced, debated and passed. They further intended that no one would slip into otherwise innocuous legislation items that had no bearing on the general intent of the legislation and in effect were items of private legislation that might thus slip through in the confusion that sometimes attends the closing moments of our legislative sessions. Perusal of House Bill 484 shrieks out of just such a prohibited action having occurred. The title of the act is as follows:

## AN ACT

"To repeal sections 452.350, 452.370, 454.500 and 454.505, R.S.Mo.1986, relating to support obligations, liens and other child services, and to enact in lieu thereof six new sections relating to the same subject, with an emergency clause".

Nowhere in the title is Section 513.436 or even Chapter 513 mentioned. Any reasonable reader could only suppose that the Act pertained to child support. It is only in the 42 words of the one paragraph hooked onto the end of Section 454.505 that Chapter 513 R.S.Mo. is mentioned, and even there Section 1 follows paragraph 12 of Section 454.-505 without any break or identification. Informal investigation indicates that this section may have been added in Conference Committee at the eleventh hour at the behest of the lobby for the finance companies, all without the knowledge and comprehension of the legislators who thought they were passing an effective tool to enforce the obligations of defaulting parents for the support of their minor children. Likewise the word "liens" found in the title, by connotation, must be construed to apply to Section 454.505(4). One can only conjure up the late hour, the smoke filled room, and the ability of the lobbyist, that created this isolated section reposing in a child support bill, recalling perhaps the reflections of Frank Costello in George V. Higgins' book "A Choice of Enemies" as to how to label the labors of one who influences the legislative process so effectively.

If it be the will of the Legislature of the State of Missouri that there be no lien avoidance on household goods or furniture or appliances, the *Pine* and *McManus* cases previously cited herein clearly allow it to do so and this Court will apply that law meticulously. However, until such will is clearly expressed in an appropriate and constitutional manner this Court would feel totally remiss in following the present thrust of ITT's argument under the present status of Missouri law. For all of the reasons stated, the Court rules, *as a conclusion of law,* that Section 1 on page 15 of the Conference Committee substitute For House Bill No. 484 as Codified in Revised Supplement 1987 to now be Section 513.436 to be unconstitutional and therefore not effective to deny avoidance of the non-possessory and non-purchase money lien of ITT as to the household furnishings, household goods and appliances of debtors.

It is to be clearly understood that this ruling applies only to the 42 words, one sentence and one paragraph denominated Section 1 and does not apply to any other phrase, sentence, paragraph, section or portion of said legislation.

The Court notes that one item of said property (the dinette set) may well be the subject of a purchase money security interest, and that two 10 speed bicycles of debtors hardly qualify for denomination as household goods or furnishings. Should ITT desire to present evidence on said issues it will be allowed to do so. Otherwise, debtors' Motion to Avoid Lien is GRANTED.

APPENDIX

# STATE OF MISSOURI
## ROY D. BLUNT
### Secretary of State

To all to Whom these Presents shall Come:

I, Roy D. Blunt, Secretary of State of the State of Missouri and Keeper of the Great Seal thereof, do hereby certify that the attached House Bill contains a full, true and complete copy of

**Truly Agreed to and Finally Passed Conference Committee Substitute for Senate Committee Substitute for HOUSE BILL 484 as Codified in Revised Statute Supplement 1987 to now be Section 513.436**

as the same appears on file and of record in this office.

**In Testimony Whereof,** I hereunto set my hand and affix the **Great Seal** of the State of Missouri. Done at the City of Jefferson, this ___Thirteenth___

day of ___October___ , A.D., 19 _87_ .

_____
Secretary of State

Comm. 15A (5-85)

FIRST REGULAR SESSION

[TRULY AGREED TO AND FINALLY PASSED]

CONFERENCE COMMITTEE SUBSTITUTE FOR

SENATE COMMITTEE SUBSTITUTE FOR

# HOUSE BILL NO. 484

## 84TH GENERAL ASSEMBLY

### AN ACT

To repeal sections 452.350, 452.370, 454.435, 454.500, and 454.505, RSMo 1986, relating to support obligations, liens and other child services, and to enact in lieu thereof six new sections relating to the same subject, with an emergency clause.

*Be it enacted by the General Assembly of the State of Missouri, as follows:*

Section A. Sections 452.350, 452.370, 454.435, 454.500, and 454.505, RSMo 1986, are repealed and six new sections enacted in lieu thereof, to be known as sections 452.350, 452.370, 454.435, 454.500, 454.505, and 1, to read as follows:

452.350. 1. Each order for child support or maintenance entered or modified by the court under the authority of this chapter, or otherwise, shall include a provision notifying the person obligated to pay such support or maintenance that, upon application by the obligee or the Missouri division of child support enforcement of the department of social services, the obligor's wages or other income shall be subject to withholding without further notice if the obligor becomes delinquent in maintenance or child support payments in an amount equal to one month's total support obligation. The order shall also contain provisions notifying the obligor that:

(1) The withholding shall be for the current month's maintenance and support; and

(2) The withholding shall include an additional amount equal to fifty percent of one month's child support and maintenance to defray delinquent child support and maintenance, which additional withholding shall continue until the delinquency is paid in full.

2. The provisions of section 432.030, RSMo, to the contrary notwithstanding, the obligated party may execute a voluntary income assignment at any time, which assignment shall be filed with the court and shall take effect after service on the employer or other payor.

3. The circuit clerk, upon application of the obligee or the division of child support enforcement, shall send, by certified mail, return receipt requested, a written notice to the employer or other payor listed on the application. The notice shall direct the employer or other payor to withhold each month an amount equal to one month's child support and maintenance until further notice from the court, and to withhold each month an additional amount equal to fifty percent of one month's child support and maintenance until the support delinquency is paid in full. The notice shall also include a statement of exemptions which may apply to limit the portion of the obligated party's disposable earnings which are subject to the withholding under federal or state law. The circuit clerk shall send a copy of this notice by regular mail to the last known address of the obligated party. A notice issued under this section shall be binding on the employer or other payor, and successor employers and payors, two weeks after mailing, and shall continue until further order of the court. The obligated party may, within that two-week period, request a hearing on the issue of whether the withholding should take effect. The withholding shall not be held in abeyance pending the outcome of the hearing. The obligor may not obtain relief

552

from the withholding by paying the overdue support. The only basis for contesting the withholding is a mistake of fact. For the purpose of this section, "mistake of fact" shall mean an error in the amount of arrearages or an error as to the identity of the obligor. The court shall hold its hearing, enter its order disposing of all issues disputed by the obligated party, and notify the obligated party and the employer or other payor, within forty-five days of the date on which the withholding notice was sent to the employer.

4. For each payment the employer may charge a fee not to exceed three dollars, which shall be deducted from the obligor's moneys, income or periodic earnings, in addition to the amount deducted to meet the support or maintenance obligation subject to the limitations contained in the federal Consumer Credit Protection Act (15 USC 1673).

5. Upon termination of the obligor's employment with an employer upon whom a withholding notice has been served, the employer shall so notify the court in writing. The employer shall also inform the court, in writing, as to the last known address of the obligor and the name and address of the obligor's new employer, if known.

6. Amounts withheld by the employer or other payor shall be transmitted, in accordance with the notice, within ten days of the date that such amounts were payable to the obligated party. If the employer or other payor is withholding amounts for more than one order, the employer or other payor may combine all such withholding that are payable to the same circuit clerk and transmit them as one payment, together with a separate list identifying the cases to which they apply. An employer or other payor who fails to honor a withholding notice under this section may be held in contempt of court and is liable to the obligee for the amount that should have been withheld. Compliance by an

employer or other payor with the withholding notice operates as a discharge of liability to the obligor as to that portion of his periodic earnings or other income so affected.

7. As used in this section, the term "employer" includes the state and its political subdivisions.

8. An employer shall not discharge or otherwise discipline, or refuse to hire, an employee as a result of a withholding notice issued pursuant to this section. Any obligor who is aggrieved as a result of a violation of this subsection may bring a civil contempt proceeding against the employer by filing an appropriate motion in the cause of action from which the withholding notice issued. If the court finds that the employer discharged, disciplined, or refused to hire the obligor as a result of the withholding notice, the court may order the employer to reinstate or hire the obligor, or rescind any wrongful disciplinary action. If after the entry of such an order, the employer refuses without good cause to comply with the court's order, or if the employer fails to comply with the withholding notice, the court may, after notice to the employer and a hearing, impose a fine against the employer, not to exceed five hundred dollars. Proceeds of any such fine shall be distributed by the court to the county general revenue fund.

9. A withholding entered under this section may, upon motion of a party and for good cause shown, be amended by the court. The clerk shall notify the employer of the amendment in the manner provided for in subsection 3 of, this section.

10. The court, upon the motion of obligor and for good cause shown, may terminate the withholding, except that the withholding shall not be terminated for the sole reason that the obligor has fully paid past due child support and maintenance.

11. A withholding effected under this section shall have priority over any other legal process under state law against the same wages, except that where the other legal process is an order issued pursuant to this section or section 454.505, RSMo, the processes shall run concurrently, up to applicable wage withholding limitations. If concurrently running wage withholding processes for the collection of support obligations would cause the amounts withheld from the wages of the obligor to exceed applicable wage withholding limitations, the current child support obligation of the first served process shall be satisfied first, and then current child support obligations of subsequently served processes shall be satisfied in the order of service. Thereafter, delinquencies shall be satisfied in the order of service of the processes, up to the applicable limitation.

12. The remedy provided herein applies to child support and maintenance orders entered prior to August 13, 1986, notwithstanding the absence of the notice to the obligor provided for in subsection 1 of this section, provided that prior notice from the circuit clerk to the obligor in the manner prescribed in subsection 5 of section 452.345 is given.

452.370. 1. Except as otherwise provided in subsection 6 of section 452.325, the provisions of any decree respecting maintenance or support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable. In a proceeding for modification of any child support award, the court, in determining whether or not a substantial change in circumstances has occurred, shall consider all financial resources of both parties, including the extent to which the reasonable expenses of either party are, or should be,

shared by a spouse or other person with whom he or she cohabits, and the earning capacity of a party who is not employed.

2. Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future statutory maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

3. Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child. The custodial parent shall have the duty to notify the noncustodial parent of the child's emancipation and failing to do so the custodial parent shall be liable to the noncustodial parent for child support paid to the custodial parent following emancipation of a minor child.

4. In any case wherein a parent has made an assignment of support rights to the division of family services on behalf of the state as a condition of eligibility for benefits under the aid to families with dependent children program and either party initiates a motion to modify the support obligation by reducing it, the state of Missouri shall be named as a party to the motion. The state shall be served with a copy of the motion by sending it by certified mail to the director of the division of child support enforcement.

5. The circuit court shall have continuing personal jurisdiction over both the obligee and the obligor of a court order for child support or maintenance for the purpose of modifying such order. Both obligee and obligor shall notify, in writing, the circuit clerk of the court in which the support or maintenance order was entered of any change of mailing address. If a personal service of the motion cannot be had in this state, the circuit clerk shall send a copy of the motion by certified mail, restricted delivery, to the last

address shown for that party in the circuit clerk's record, and service shall be considered complete upon mailing. The order may be modified'only as to support or maintenance installments which accrued subsequent to the date of personal service, or in the case of service by mail, from the date the circuit clerk sent a copy of the motion, by certified mail, to the party to be served. For the purpose of 42 USC 666(a)(9)(C), the circuit clerk shall be considered the "appropriate agent" to receive notice of the motion to modify for the obligee or the obligor, but only in those instances in which personal service could not be had in this state.

454.435. 1. Each prosecuting attorney may enter into a cooperative agreement or may enter into a multiple county agreement to litigate or prosecute any action necessary to secure support for any person referred to such office by the division of child support enforcement including, but not limited to, reciprocal actions under this chapter, actions to establish and enforce obligations owed to the state under an assignment of support rights, actions to enforce medical support obligations ordered in conjunction with a child support obligation, actions to obtain reimbursement for the cost of medical care provided by the state for which an obligor is liable under subsection 9 of' section 208.215, RSMo, and actions to establish the paternity of a child for whom support is sought. In all cases where a prosecuting attorney has entered into a cooperative agreement to seek the establishment of a support obligation, the prosecuting attorney shall. in addition to periodic monetary support, seek an order from the court directing the obligated parent to maintain medical insurance on behalf of the child for whom support is sought, which insurance shall, in the opinion of the court, be sufficient to provide adequate

medical coverage; or to otherwise provide for such child's necessary medical expenses.

2. In all cases where a prosecuting attorney has entered into a cooperative agreement to litigate or prosecute an action necessary to secure child support, and an information is not filed or civil action commenced within sixty days of the receipt of the referral from the division, the division may demand return of the referral and the case file and the prosecuting attorney shall return the referral and the case file. The division may then use any other attorney which it employs or with whom it has a cooperative agreement to establish or enforce the support obligation.

3. For the performance of the additional duties imposed by this section, each prosecuting attorney in counties of the third and fourth class shall receive additional annual compensation of four thousand five hundred dollars; each prosecuting attorney in counties of the second class shall receive additional annual compensation of two thousand dollars; each prosecuting attorney in counties of the first class shall receive additional annual compensation of one thousand dollars; each circuit attorney in cities not contained within a county shall receive additional annual compensation of seven thousand five hundred dollars. The additional annual compensation for prosecuting attorneys and circuit attorneys provided for in this subsection shall be paid with county or city funds; provided, however, that the state shall reimburse the counties or cities for funds expended for the additional annual compensation to the extent that incentive payments made to a county or city by the department of social services pursuant to the terms of cooperative agreements are insufficient to pay for the additional annual compensation. On or before January fifteenth of each year, the department shall calculate the

558

amount paid to each county as incentive payments for the preceding year. The department shall determine the additional amount due, if any, to each county and shall pay such additional amount from appropriations made for that purpose. In the absence of a cooperative agreement between the prosecuting attorney and the division of child support enforcement, the additional annual compensation provided for in this section shall be paid with county or city funds entirely and not with state funds.

4. As used in this section, the term "prosecuting attorney" means, with reference to any city not within a county, the circuit attorney.

454.500. 1. At any time after the entry of an order under sections 454.470 and 454.475, the obligated parent, the division, or the person or agency having custody of the dependent child may file a motion for modification with the director. Such motion shall be in writing, shall set forth the reasons for modification, and shall state the address of the moving party. The motion shall be served by the moving party in the manner provided for in subsection 5 of section 454.465 upon the obligated parent or the party holding the support rights, as appropriate. In addition, if the support rights are held by the division of family services on behalf of the state, a true copy of the motion shall be mailed by the moving party by certified mail to the person having custody of the dependent child at the last known address of that person. A hearing on the motion shall then be provided in the same manner, and determinations shall be based on considerations set out in section 454.475. If the child for whom the order applies is no longer in the custody of a person receiving public assistance or receiving support enforcement services from the department, or a division thereof, under section 454.425, the director may certify the

matter for hearing to the circuit court in which the order was filed pursuant to section 454.490 in lieu of holding a hearing under section 454.475. If the director certifies the matter for hearing to the circuit court, service of the motion to modify shall be had in accordance with the provisions or subsection 5 of section 452.370, RSMo. If the director does not certify the matter for hearing to the circuit court, service of the motion to modify shall be considered complete upon personal service, or on the date of mailing, if sent by certified mail. For the purpose of 42 USC 666(a)(9)(C), the director shall be considered the "appropriate agent" to receive the notice of the motion to modify for the obligee or the obligor, but only in those instances in which the matter is not certified to circuit court for hearing, and only when service of the motion is attempted on the obligee or obligor by certified mail.

2. A motion for modification made pursuant to this section shall not stay the director from enforcing and collecting upon the existing order pending the modification proceeding unless so ordered by the court.

3. Only payments accruing subsequent to the service of the motion for modification upon all named parties to the motion may be modified. When the obligated parent or the division is the moving party, modification may be granted only upon a showing of a change of circumstances so substantial and continuing as to make the terms unreasonable. When the person or agency having custody of the dependent child is the moving party, no showing of such changed circumstances shall be required.

4. The circuit court may, upon such terms as may be just, relieve a parent from an administrative order entered against that parent because of mistake, inadvertence, surprise, or excusable neglect.

560

5. No order entered pursuant to section 454.476 shall be modifiable under this section except that, an order entered under section 454.476 shall be amended by the director to conform with any modification made by the court that entered the court order upon which the director based his order.

454.505. 1. In addition to any other remedy provided by law for the enforcement of support, if an order has been entered by the director pursuant to sections 454.460 to 454.505 and an arrearage exists on the payments required, the director shall issue an order directing any employer or other payor of the parent to withhold and pay over to the department or the clerk of the circuit court in the county in which the order of the director was docketed pursuant to section 454.490, money due or to become due the obligated parent in an amount not to exceed federal wage garnishment limitations, until all arrearages under such administrative order are paid in full. Thereafter, the amount ordered to be paid for support shall be withheld from amounts due or becoming due the parent at each pay period. If the parent voluntarily requests that money due or to become due him be withheld and applied to the support obligation, the employer or other payor shall comply with that request as if so ordered by the director.

2. An order entered pursuant to this section shall recite the amount of all arrearages due and the amount required to be paid as continuing support. A copy of sections 454.460 and 454.505 shall be appended to the order. A copy of such order shall be filed with the circuit court in the county in which the administrative support order was filed pursuant to section 454.490.

3. An order entered pursuant to this section shall be served on the employer or other payor by certified mail,

return receipt requested, and shall be binding on the employer or other payor two weeks after mailing of such service. A copy of the order and a notice of property exempt from withholding shall be mailed to the obligor at his last known address. The employer or other payor shall withhold from the earnings or other income the amount specified in the order, and may deduct an additional sum not to exceed three dollars as reimbursement for costs, except that the total amount withheld shall not exceed the limitations contained in the federal Consumer Credit Protection Act, 15 USC 1673(b). The employer or other payor shall transmit the payments as directed in the order within ten days of the date the earnings or other income were payable to the obligor.

4. If the order is served on a payor other than an employer, it shall be a lien against any money due or to become due the obligated parent which is in the possession of the payor on the date of service or which may come into the possession of the payor after service until further order of the director, except for any deposits held in two or more names in a financial institution.

5. The department shall notify an employer or other payor upon whom such an order has been directed whenever all arrearages have been paid in full, and whenever, for any other reason, the amount required to be withheld and paid over to the department under the order as to future pay periods is to be reduced or redirected. If the parent's support obligation is required to be paid monthly and the parent's pay periods are at more frequent intervals, the employer or other payor may, at the request of the parent and with the consent of the director, withhold and pay over to the department, an equal amount at each pay period cumulatively sufficient to comply with the withholding order.

562

6. An order issued under subsection 1 of this section shall be a continuing order and shall remain in effect and be binding upon any employer or other payor upon whom it is directed until a further order of the director. Such orders shall terminate when all children for whom the support order applies are emancipated or deceased, or the support obligation otherwise ends, and all arrearages are paid. No order to withhold shall be terminated solely because the obligor has fully paid arrearages.

7. An order issued under subsection 1 of this section shall have priority over any other legal process under state law against the same wages, except that where the other legal process is an order issued pursuant to this section or section 452.350, RSMo, the processes shall run concurrently, up to applicable wage withholding limitations. If concurrently running wage withholding processes for the collection of support obligations would cause the amounts withheld from the wages of the obligor to exceed applicable wage withholding limitations, the current support obligation of the first served process shall be satisfied first, and then current support obligations of subsequently served process or processes shall be satisfied in the order of service. Thereafter, arrearages shall be satisfied in the order of service of the processes, up to the applicable limitation.

8. No employer or other payor who complies with an order entered pursuant to this section shall be liable to the parent, or to any other person claiming rights derived from the parent, for wrongful withholding. An employer or other payor who fails or refuses to withhold or pay the amounts as ordered under this section shall be liable to the party holding the support rights in an amount equal to the amount which became due the parent during the relevant period and which, under the order, should have been

withheld and paid over.

9. The remedy provided by this section shall be available where the state or any of its political subdivisions is the employer or other payor of the obligated parent in the same manner and to the same extent as where the employer or other payor is a private party.

10. An employer shall not discharge, or refuse to hire or otherwise discipline an employee as a result of an order to withhold and pay over certain money authorized by this section. If any such employee is discharged within thirty days of the date upon which an order to withhold and pay over certain money is to take effect, there shall arise a rebuttable presumption that such discharge was a result of such order. This presumption shall be overcome only by clear, cogent and convincing evidence produced by the employer that the employee was not terminated because of the order to withhold and pay over certain money. The director is hereby authorized to bring an action in circuit court to determine whether the discharge constitutes a violation of this subsection. If the court finds that a violation has occurred, the court may enter an order against the employer requiring reinstatement of the employee. Further, the court may enter judgment against the employer for the back wages, costs, attorney's fees, and for the amount of child support which should have been withheld and paid over during the period of time the employee was wrongfully discharged.

11. If an obligor for whom an order to withhold has been issued under subsection 1 of this section terminates his employment, the employer shall, within ten days of the termination, notify the division of the termination, shall provide to the division the last known address of the obligor, if known to the employer, and shall provide to the department the name and address of the obligor's new

564

CCS SCS HB 484                15

employer, if known. When the department determines the identity of the obligor's new employer, the director shall issue an order to the new employer as provided in subsection 1 of this section.

12. If an employer or other payor is withholding amounts for more than one order issued under subsection 1 of this section, the employer or other payor may transmit all such withholdings which are to be remitted to the same circuit clerk as one payment together with a separate list identifying obligors for whom a withholding has been made and the amount withheld from each obligor so listed.

Section 1. No property upon which a debtor has voluntarily granted a lien shall, to the extent of the balance due on the debt secured thereby, be subject to the provisions of chapter 513, RSMo, or be exempt from attachment or execution.

Section B. Because immediate action is necessary to ensure the continuing enforcement of court-ordered enforcement obligations, this act is deemed necessary for the immediate preservation of the public health, welfare, peace and safety, and is hereby declared to be an emergency act within the meaning of the constitution, and this act shall be in full force and effect upon its passage and approval.