81 B.R. 545 (1987)
In re Darrel L. SAPP and Bonita S. Sapp, Debtors.
Bankruptcy No. 87-03826-C.
United States Bankruptcy Court, W.D. Missouri, C.D.
December 9, 1987.
Norman W. Lampton, Columbia, Mo., for ITT.
*546 Fred Dannov, Columbia, Mo., for debtors.

MEMORANDUM OPINION
FRANK W. KOGER, Bankruptcy Judge.
Darrel Lynn Sapp and Bonita Sue Sapp, hereinafter debtors, filed their Chapter 7 petition on September 3, 1987. On September 15, 1987, debtors filed two motions for avoidance of purported non-possessory and non-purchase money liens on their household goods under 11 U.S.C. § 522(f). The liens were held by two finance companies. Avco Financial Services of Rolla, Inc. made no answer and defaulted but ITT Financial Services, hereinafter ITT, denied the allegations of debtors' motion and claimed that the goods were not exempt and were not household goods. At the hearing, counsel for both parties announced that an evidentiary hearing was not necessary and that the parties had a strictly legal question to be ruled by the Court, involving a change in the law of the State of Missouri. Counsel for ITT then introduced a duly exemplified copy of House Bill 484 as Codified in Revised Statute Supplement 1987 to now be § 513.436. The entire exemplified House Bill 484 is appended to this opinion, as a substantial portion of this opinion is intelligible only after perusal of said legislation.
The pertinent provision found on page 564, consists of one sentence and, in lines 1 through 5 following line 139 states:
"Section 1. No property upon which a debtor has voluntarily granted a lien shall, to the extent of the balance due on the debt secured thereby, be subject to the provisions of Chapter 513, R.S.Mo., or be exempt from attachment or execution".
Afficiandos of bankruptcy history will recall that § 522 of the 1978 Code created the so called "federal exemptions" as set out in § 522(d)(1 through 11) allowing the debtor to exempt, inter alia, all household goods on the basis of not more than $200.00 per item with a cap of $4,000.00, although the aforesaid total limitation was not enacted until 1984 in the so called "consumer amendments". While creditors in states which provided less extensive exemptions than those contained in § 522(d) were extremely unhappy at this turn of events, little did they realize that a majority of bankruptcy acts prior to the 1898 Act had provided for certain federal exemptions, albeit they were generally far less generous than those provided by state law. Congress provided a "safety valve" for the states in § 522(b)(1) and through date of November 20, 1986, thirty-six of the sovereign states had elected to "opt out" of the federal exemptions as said section provided. The State of Missouri exercised said option in 1982 and § 513.427 Mo.R.S. eliminates the federal exemptions for residents of the state. At the same time the legislature amended § 513.430 Mo.R.S. to provide the updated quality and quantum of exemptions in personal property thereafter available to residents. The pertinent portion of § 513.430 Mo.R.S. reads as follows:
"The following property shall be exempt from attachment and execution to the extent of any person's interest therein: (1) Household furnishings, household goods, wearing apparel, appliances, books, animals, crops or musical instruments that are held primarily for personal, family or household use of such person or a dependent of such person, not to exceed one thousand dollars in value in the aggregate; . . . "
Thus for five years, Missouri residents have uniformly exempted one thousand dollars of household goods and furniture. In point of practice, one wonders if future sociologists will conclude that all Missouri families possessed basically the same quantum of household necessities, since their claim for exemption was so uniform.
Just as uniformly as they claimed the household goods exemption, parties in Missouri filing for bankruptcy have availed themselves of the provisions of 11 U.S.C. § 522(f) and thus avoided all non-purchase money and non-possessory liens on the aforesaid household goods provided that the liens were created after the November, 1978, enactment date of the Bankruptcy Reform Act of 1978. United States v. *547 Security Industrial Bank, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982). The record of the hearings held by the Brookings Commission and early hearings before the House and Senate were replete with "horror stories" of finance companies forcing reaffirmations of vastly inflated debts by threats of repossession of the household goods or "sticks" of debtors who had no credit available to replace their basic living tools and who had granted liens on same previously.
Congress had passed § 522(f) as the cornerstone of its avowed intent to provide indigent debtors with a fresh start, just as Congress had spelled out in § 522(d) what it considered to be the basic minimums necessary to supply the fresh start. Nevertheless, the § 522(b) provision allowing the individual states to set their own exemptions, also has been held to allow the states to eliminate the avoidance powers under § 522(f) if that were the will of the state lawmaking body. In re Pine, 717 F.2d 281 (CA 6, 1983).
Based on that background, the Court must construe the effect of § 513.436, Mo. R.S., effective July 15, 1987, passed by the 84th General Assembly of the State of Missouri. The Court determines that it does not change the prior status of lien avoidance.
In reaching that conclusion the Court does not seek to revisit the past battles of whether state action (opting out) can override any provision of § 522 other than subsection (d) because it seems clear that that issue has been resolved in favor of the creditors by at least two opinions by two different circuits. See In re Pine, 717 F.2d 281 (CA 6, 1983) and Matter of McManus, 681 F.2d 353 (CA 5 1982). Nor does the Court seek to trek through the swamp of whether state legislation which becomes effective on July 15, 1987, has the power to change the terms of a contract entered into on January 30, 1987, the date of the ITT lien, with the attendant questions of substantive, procedural or ex post facto laws. Such an analysis is both narrow and unnecessary in regard to this legislation which is so broad and far reaching. For indeed, even if the Court should reach the conclusion that the legislation could affect only bargains struck after its passage date, this would still mean that all non-possessory and non-purchase money liens granted after July 15, 1987, would still not be avoidable under this new legislation; thereby negating the Congressional intent as expressed in § 522(f) and the avowed desire to create a "fresh start".
Instead this Court chooses to base its negative conclusion to the issue it posed on a constitutional basis. Not on a federal constitutional basis, the Court hastens to add but instead on a state constitutional basis. This is emphasized because this Court has previously indicated its doubts as to the propriety of a Bankruptcy Court (or any Court, constituted as this one is) declaring any Congressional enactment to be unconstitutional. And while this Court has some reluctance to so brand the product of the infinite wisdom of the duly elected lawmakers of the State of Missouri, it reluctantly feels that it must do so in this particular instance because this particular piece of legislation will have extremely broad ramifications and will visit severe economic problems upon debtors without the financial ability to afford legal talent to carry the fight to the higher courts on an individual basis. More succinctly stated, if this Court is in error, ITT can well afford to prove that error but the Sapps cannot.
Philosophical observations aside, the reason § 513.436 Mo.R.S. is unconstitutional is found in Article 3, § 23 of the Constitution of 1945 of the State of Missouri. That section reads:
"Section 23. Limitation of scope of bills  contents of title  exceptions

Section 23. No bill shall contain more than one subject which shall be clearly expressed in its title, except bills enacted under the third exception in Section 37 of this article and general appropriation bills, which may embrace the various subjects and accounts for which moneys are appropriated".
Nor was that a new section enacted originally in 1945. It follows precisely the intent of Article 4, Section 28 of the Constitution *548 of 1875, which in turn followed Article 4, Section 32 of the Constitution of 1865. The founding fathers of this state obviously intended that each piece of legislation passed by the state's lawmakers would be clearly labeled, clearly understood and clearly denominated as it was introduced, debated and passed. They further intended that no one would slip into otherwise innocuous legislation items that had no bearing on the general intent of the legislation and in effect were items of private legislation that might thus slip through in the confusion that sometimes attends the closing moments of our legislative sessions. Perusal of House Bill 484 shrieks out of just such a prohibited action having occurred. The title of the act is as follows:
AN ACT
"To repeal sections 452.350, 452.370, 454.500 and 454.505, R.S.Mo.1986, relating to support obligations, liens and other child services, and to enact in lieu thereof six new sections relating to the same subject, with an emergency clause".
Nowhere in the title is Section 513.436 or even Chapter 513 mentioned. Any reasonable reader could only suppose that the Act pertained to child support. It is only in the 42 words of the one paragraph hooked onto the end of Section 454.505 that Chapter 513 R.S.Mo. is mentioned, and even there Section 1 follows paragraph 12 of Section 454.505 without any break or identification. Informal investigation indicates that this section may have been added in Conference Committee at the eleventh hour at the behest of the lobby for the finance companies, all without the knowledge and comprehension of the legislators who thought they were passing an effective tool to enforce the obligations of defaulting parents for the support of their minor children. Likewise the word "liens" found in the title, by connotation, must be construed to apply to Section 454.505(4). One can only conjure up the late hour, the smoke filled room, and the ability of the lobbyist, that created this isolated section reposing in a child support bill, recalling perhaps the reflections of Frank Costello in George V. Higgins' book "A Choice of Enemies" as to how to label the labors of one who influences the legislative process so effectively.
If it be the will of the Legislature of the State of Missouri that there be no lien avoidance on household goods or furniture or appliances, the Pine and McManus cases previously cited herein clearly allow it to do so and this Court will apply that law meticulously. However, until such will is clearly expressed in an appropriate and constitutional manner this Court would feel totally remiss in following the present thrust of ITT's argument under the present status of Missouri law. For all of the reasons stated, the Court rules, as a conclusion of law, that Section 1 on page 15 of the Conference Committee substitute For House Bill No. 484 as Codified in Revised Supplement 1987 to now be Section 513.436 to be unconstitutional and therefore not effective to deny avoidance of the non-possessory and non-purchase money lien of ITT as to the household furnishings, household goods and appliances of debtors.
It is to be clearly understood that this ruling applies only to the 42 words, one sentence and one paragraph denominated Section 1 and does not apply to any other phrase, sentence, paragraph, section or portion of said legislation.
The Court notes that one item of said property (the dinette set) may well be the subject of a purchase money security interest, and that two 10 speed bicycles of debtors hardly qualify for denomination as household goods or furnishings. Should ITT desire to present evidence on said issues it will be allowed to do so. Otherwise, debtors' Motion to Avoid Lien is GRANTED.

*549 APPENDIX

*550 
*551 
*552 
*553 
*554 
*555 
*556 
*557 
*558 
*559 
*560 
*561 
*562 
*563 
*564