**In the Matter of Duane Allen REID, Constance Fern Reid, Debtors.**

**Bankruptcy No. 88–30840 HCD.**

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

Dec. 30, 1988.

William Hoehner, South Bend, Ind., for debtors.

Richard A. Nussbaum, South Bend, Ind., for creditor.

## MEMORANDUM OF DECISION

HARRY C. DEES, Jr., Bankruptcy Judge.

This matter is before the court on the debtors' MOTION TO AVOID LIEN UNDER 11 U.S.C. § 522(f) ("Motion"). The creditor, General Finance Corporation ("General"), whose lien the debtors are attempting to avoid, filed an objection to the Motion. A pretrial conference was held and the parties waived a trial on the matter and instead agreed to submit stipulated facts and legal briefs, with the court to rule on the basis of those documents.

### Jurisdiction

The matter at hand concerns a motion to avoid lien under 11 U.S.C. § 522(f) and as such is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(K). Pursuant to 28 U.S.C. § 157(a) and General Rule 45 of the Rules of the United States District Court for the Northern District of Indiana, this case has been referred to the undersigned bankruptcy judge for hearing and determination.

The court having reviewed the record now makes the following entry. This entry shall serve as findings of fact and conclusions of law required by Bankruptcy Rules 9014 and 7052.

### Issue

Whether the following items of property ("Property") fall within the meaning of "household goods and furnishings" as contemplated by 11 U.S.C. § 522(f)(2)(A) which would allow the debtors to avoid the lien that resulted from General's nonpossessory, nonpurchase-money security interest in those items.

Kodak Instamatic camera
35 Fishing rods and reels
A 50 gallon aquarium
A Schwinn bicycle
A Murray lawnmower
A portable charcoal grill
A hand held electronic calculator
A Coleman stove
Coleman lantern
4 man tent
1 sleeping bag
1 gym weight set
1 second portable radio & tape player
Various power tools, including saws and lathes
A coin collection

### Discussion

In the parties' PRE–TRIAL STATEMENT they agreed that there were no contested issues of fact. They stipulated that the debtors did obtain a loan from General on or about April 14, 1987, and in return the debtors gave General a security interest in the aforementioned Property. The parties' dispute centers on whether or not the Property comes within the scope of the terms "household goods and household furnishings" set out in § 522(f)(2)(A).

To qualify for the benefits of the lien avoidance powers of § 522(f), the Property must fit into one of the described categories of § 522(f)(2)(A) which are as follows:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

The debtors contend that the Property constitutes "household goods" necessary to a fresh start. Household goods, the debtors argue, "... is defined as personal property normally used by a debtor and a debtor's

dependents which enables them to live in a usual and reasonable convenient, comfortable and dignified manner ..." and necessarily must include "... items which have entertainment or recreational value as the usual and reasonable lifestyle reflects those values." MEMORANDUM OF DEBTORS ("Memorandum") at 2. The debtors urge the court to construe § 522(f) liberally and rely on the "... debtor's standard and style of living, at least insofar as such style is not unusually affluent." Memorandum at 3–4.

General, on the other hand, contends that this type of Property was not contemplated by the use of the terms household goods and household furnishings in § 522(f)(2)(A). General urges the court to adopt a strict interpretation covering only those goods necessary for the functioning of the household. General contends that "... they [Property items] are not needed for maintaining the house, nor will they, if the lien is not avoided, hinder a 'fresh start' that the Bankruptcy Code anticipates. These items are not of such a character that without them the debtors will not be able to support themselves or their family." AMENDED MEMORANDUM OF THE CREDITOR ("Amended Memorandum") at 2.

General further contends that the items of Property are "... not essential, but are in fact luxury and additional items, which are not held primarily for the personal, family, or household use of the debtors." *Id.* General also adds that "these have crossed over the definitional lines of necessities, and convenient items to become luxury items not needed by the debtor for a fresh start." Amended Memorandum at 3.

The threshold issue then becomes the degree to which property can be characterized as recreational or as a luxury and at the same time maintain its character as household goods or household furnishings as anticipated by § 522(f)(2)(A).

The Congressional intent of § 522 must guide the court through its analysis of whether or not a particular piece of property falls within the terms household goods

and household furnishings as used in § 522(f)(2)(A).

■ The inquiry then becomes one of semantics and statutory construction. The ambiguity of the reach of § 522 is inherent in the use of the terms household goods and household furnishings. Congress failed to define those terms leaving that determination to the discretion of the bankruptcy court. The concept of household goods and furnishings is more amenable to an objective standard as opposed to the more ethereal concept of good or bad faith, where intent is almost impossible to prove and subjective analysis is often required. To protect the process from the inherent dangers of subjective analysis each case must turn on its own facts and the arguments of counsel. In other words, a totality of the circumstances analysis must be used.

While the courts and the bar would feel more secure with a "bright-line rule," *Michigan v. Chesternut*, — U.S. —, 108 S.Ct. 1975, 1976, 100 L.Ed.2d 565 (1988), to guide them, formulation of that type of rule is not always possible. The bankruptcy court is a court of equity and a more appropriate approach would be a totality of the circumstances analysis with a related list of objective criteria to guide the court. The policies and maxims employed by the bankruptcy court in its constitutional mandate to interpret the code must reflect the Congressional intent of § 522 to "... protect the debtor's essential needs and to enable him to have a fresh start economically." *United States v. Security Industrial Bank, et al,* 459 U.S. 70, 83, 103 S.Ct. 407, 415, 74 L.Ed.2d 235 (1982) (Blackmun, J., concurring).

Congress, by enactment of 11 U.S.C. § 522(f) provided to a debtor a form of protection from what Congress perceived as the threats of creditors through "adhesion contracts" which impaired a debtor's constitutional right to a "fresh start." The legislators felt that the lending institutions' general practice of requiring a consumer debtor to convey a security interest in household goods or tools of the trade as a condition of making a loan was not based

on the intrinsic value of the property, but rather, was based on the leverage it would give them in the posture of a collection or bankruptcy proceeding.

After the filing of a bankruptcy petition, the creditor could exercise the rights granted in the security agreement by threatening the debtor with repossession of the collateral if he refused to reaffirm the debt. Because the property was so basic to the debtor's daily existence, was rarely of any consequential value, and its replacement cost was high, the creditor's threat of repossession was usually effective and the creditor therefore received more than he would have received upon foreclosure. *H.R.Rep.* No. 595, 95th Cong., 1st Sess. 127 (1977) *reprinted in 1978 U.S.Code Cong. & Admin.News* 5787, 6087–88.

11 U.S.C. § 522(f) states in pertinent part that:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

In *United States v. Security Industrial Bank, et al,* 459 U.S. 70, 83, 103 S.Ct. 407, 415, 74 L.Ed.2d 235 (1982), Justice Blackmun wrote a separate concurrence discussing § 522 of the Bankruptcy Act of 1978 and stated that:

Section 522, for the first time, established a set of federal exemptions for individual debtors. Concededly, the section, as all similar statutes, was enacted to protect the debtor's essential needs and to enable him to have a fresh start economically. Section 522(f)(2) *permits the debtor to "avoid the fixing" of a nonpossessory, nonpurchase-money security interest in certain property, but the subsection does not extend to all property otherwise exempt under § 522(d).* It is limited to certain personal items, such as household furnishings, wearing apparel, jewelry, tools of the debtor's trade, and professionally prescribed health aids. (emphasis added).

The issue of entitlement to exemptions of § 522(b)(1) or (2) and entitlement to the lien avoidance protection of § 522(f) are separate and distinct issues which are controlled by separate statutes. *In re Psick,* 61 B.R. 308, 313 (Bankr.D.Minn.1985). The Bankruptcy Code allows the states to "opt in" and use the federal exemptions set out in 11 U.S.C. § 522(d) or to "opt out" and limit the debtor to exemptions allowed under state law. Unless state law prevents the debtor from electing to use the federal exemptions the debtor may choose between the federal or state exemptions. *See,* 11 U.S.C. § 522(b); *In re Thompson,* 750 F.2d 628, 630 (8th Cir.1984). Indiana has passed legislation whereby

... an individual debtor domiciled in Indiana;

(1) is not entitled to the federal exemptions as provided by section 522(d) of the Bankruptcy Code of 1978 (11 U.S.C. § 522(d)); and

(2) may exempt from the property of the estate only that property specified by Indiana law.

Indiana Code § 34–2–28–0.5(1) and (2) (1986). The exemptions allowed by Indiana are set out in Indiana Code § 34–2–28–1 and include "... other real estate or tangible personal property of four thousand dollars ($4,000.00) ..." which could conceivably cover the property at issue in this case. Ind.Code § 34–2–28–1(a)(2) (1986). The fact that Indiana has "opted out" of the

federal exemption scheme set out in § 522(d) does not affect the debtor's power to avoid liens pursuant to § 522(f). *In re Owen,* 70 B.R. 366 (Bankr.N.D.Ind.1987).

■ The court finds that merely because the debtors may claim the Property as exempt property, if they so choose, pursuant to Ind.Code § 34–2–28–1(a)(2) and 11 U.S.C. § 522(b)(2), this does not necessarily entitle them to avoid the lien covering the Property pursuant to § 522(f). The debtors must prove that the Property encumbered by the lien they seek to avoid falls into one of the classes enumerated under § 522(f)(2)(A), (B), or (C).

The determination that the bankruptcy court must make was succinctly set out by Judge Kishel in the case of *In re Psick,* 61 B.R. 308, 313 (Bankr.D.Minn.1985) where he stated:

> In general, the class includes property which Congress deemed to be essential to a debtor's fresh start, which is, by its nature, of more significant value to a penurious debtor than to a repossessing secured creditor (citations omitted). This class is narrower in its scope than the class of property protected under the exemption statutes from the claim of unsecured creditors in the liquidation process. *Simply stated, not all property which may be claimed as exempt under § 522(d) may be freed from encumbering liens under § 522(f).* (emphasis added).

Section 522(f)(2)(A) creates and delineates the debtors' lien avoidance remedy which by its specifically enumerated classes, is applicable only to protected classes of property which Congress deemed essential to a debtor's fresh start. Property, which by its nature, was rarely of more than inconsequential value to the creditor seeking to repossess, but of significant value to the debtor in his pursuit of that fresh start. *Psick,* 61 B.R., at 313. The debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of a lien, and may similarly avoid a nonpossessory, non-purchase-money security interest in *cer-*

*tain household and personal goods.* H.R. *Rep.* No. 595 at 362.

To declare, as General suggests, that only goods necessary to the operation of the household can qualify as household goods would be to ignore those cases where such non-necessary goods were given such status. *In re Vaughn,* 64 B.R. 213, 214 (Bankr.S.D.Ind.1986). *See also; Fisher v. Credithrift of America (In re Fisher),* 11 B.R. 666, 669 (Bankr.W.D.Okla. 1981) (court held that the lien in the debtor's two air conditioners, vacuum cleaner, TV and stereo could be avoided pursuant to § 522(f)); *Coleman v. Lake Air Bank (In re Coleman),* 5 B.R. 76 (Bankr.M.D.Tenn. 1980) (court held that the debtor's component stereo system consisting of receiver, turntable, two tape recorders, and a pair of speakers constituted household goods or household furnishings for § 522(f) lien avoidance purposes); *In re Bandy,* 62 B.R. 437, 438–39 (Bankr.E.D.Cal.1986) (court held that household goods and furnishings include any personal property which is normally used by and found in the residence of a debtor or his dependents or at or upon the curtilage of said residence and includes property that enables the debtor and his dependents to live in a usual, convenient, and comfortable manner or that has entertainment or recreational value even though used away from the home thus avoiding the lien in the following household furnishings: 4 televisions, VCR, Commodore Computer, answering machine, Atari video game, stereo, tape player, three speakers, golf clubs, exercise bicycle and dynagym, paint sprayer, drill/drill press, miscellaneous hand tools, lawn mower, miscellaneous garden tools, jade bracelet, ring, and necklace); *In re Eveland, et al,* 87 B.R. 117, 119 (Bankr.E.D.Cal.1988) (court held that debtor's personal property including bicycles, cameras, snow skis, poles, and boots, binoculars, fishing and camping equipment, personal computers and exercise equipment are household goods subject to the lien avoidance power of § 522(f) but only to the extent that the liens did not exceed the monetary value under the California exemption statute; the court held that liens in firearms are not avoidable because Cali-

fornia no longer listed them as exempt property); *Beard v. Dial Plan (In the Matter of Beard)*, 5 B.R. 429, 430 (Bankr.S.D. Iowa 1980) (court held that a stereo and VCR were household goods and the lien therein could be avoided under § 522(f) but held that liens in YASHICA camera equipment and 4 pairs of cross country skis were valid and could not be avoided); *In the Matter of Jones*, 5 B.R. 655, 658 (Bankr.M. D.N.C.1980) (court held that a garden tractor and mower attachment were household goods subject to the lien avoidance provision); *In the Matter of Luczak*, 16 B.R. 743, 744 (Bankr.W.D.Wis.1982) (court held that a microwave oven is a household good subject to lien avoidance provision); *In re Lucas*, 62 B.R. 949, 951–54 (Bankr.S.D.Cal. 1986) (in reliance on state exemption laws, the court held that the debtor's stereo, VCR, answering machine, oil paintings, Hummel figurines, beer steins and exercise bike were exempt as household goods and furnishings for lien avoidance purposes, but held that the debtor's golf clubs and camera equipment were not exempt from liens as household goods or furnishings because they were commonly used outside the home); *First Bank of Catoosa v. Reid (In re Reid)* 757 F.2d 230, 235 (10th Cir. 1985) (court upholding bankruptcy court's decision that "classic religious paintings" were not exempt and the liens were not avoidable because under the circumstances the paintings were not held primarily for personal, family, or household use) *but cf.; General Finance Corp. of Colorado v. Ruppe (In re Ruppe)*, 3 B.R. 60, 61 (Bankr. D.Colo.1980) (relying on a narrow construction of the terms household goods and furnishings, the court held that a movie camera, slide projector, and movie projector were not household goods for lien avoidance purposes but held that a TV and stereo system were household goods for lien avoidance purposes relying on the state law definition of household goods); *McTearnen v. Associates Financial Services Co. of Colorado, Inc.*, 54 B.R. 764, 765 (Bankr.D.Colo.1985) (court held that items in dispute did not represent property a debtor needed for a fresh start but was instead "recreational" property and as such the lien therein could not be avoided).

To formulate a hard and fast rule, such as General suggests, may confuse the already difficult task of determining what property amounts to household goods by requiring the court in each case to determine whether an item is truly "necessary" to the operation of the household. As Judge Sufana stated in *Vaughn*, this would be "... an unenviable and nearly impossible task." *Vaughn*, 64 B.R. at 215. It is nonetheless a task that must be undertaken by the bankruptcy court, difficult as it may be, and, as a result, the court must determine if the Property in question is necessary to the debtors' fresh start or merely a luxury.

The term "luxury" has been defined as a non-essential item or service that contributes to luxurious living; an indulgence in ornament or convenience beyond the indispensable minimum; extravagance. *Webster's Third New International Dictionary of the English Language, Unabridged*, at 1349, (Merriam–Webster, Inc. 1981).

Corpus Juris Secundum, 35 C.J.S. *Exemption* § 37 (1960), states that household furniture "... applies only to those vessels, utensils, or goods which are designed for use in the family as instruments of the household and for conducting and managing household affairs." This definition suggests the property should be utilitarian or practical. That section goes on to state that "... the exemption is ordinarily expressly limited to necessary articles, the implication being one of necessity for the support of the debtor's family. The household furniture, to be regarded as necessary for the debtor and his family, need not be absolutely indispensable to the bare existence of life, but may include what may be considered as necessary to comfort and convenience, although there is some contrary authority, to the effect that actual necessity must exist. Superfluities, however, and articles of luxury, fancy, and ornament are excluded."

In addition, to be exempt, the property must be kept and used by the debtor and

his or her family. Items devoted or related to commercial usage do not fall within the terms household goods and furnishings. *Reid*, 757 F.2d at 234–35. Therefore, all items of personal property that a debtor has in his home may not be exempted. Because of the dissimilarity of circumstances "... each case will be evaluated on its merits with regard to its own particular facts and circumstances, to prevent abuses by either creditors or debtors." *Fisher*, 11 B.R. at 669.

■ The court does not feel that adhering to only a strict or liberal interpretation of the terms household goods and furnishings will solve the dilemma of whether or not a particular item falls within those categories for the lien avoidance purposes § 522(f). Therefore the court will apply a totality of the circumstances analysis. A working definition of household goods and furnishings must be the foundation of the analysis. The court finds that the term household goods and furnishings includes property which is commonly used by and found in the dwelling, or the area surrounding the dwelling, of a reasonable debtor and his or her dependents which is necessary to enable the debtor to have a fresh start and may include property characterized as having entertainment or recreational value, but not property properly characterized as luxurious.

In making the determination of whether the Property in issue is a household good or furnishing as contemplated by § 522(f)(2)(A), the court will look at the totality of the circumstances with reference to the following list of criteria:

1. Type of property.
2. Value of the property to the debtor.
3. Current resale value of the property.
4. Was the lien consensual or involuntary?
5. Could the security interest be characterized as a contract of adhesion?
6. Relation of the fair market value of the property at the time of the loan to the amount of the loan.
7. Debtor's station in life.
8. Does the property have extraordinary value as compared to the value of items of the same type found in other households?
9. Was the property an equal and legitimate source of security in relation to the value of the loan at the time of the loan?
10. Is the property purely recreational or for entertainment?
11. Is the item commonly found in the average household?
12. Is the property used in or away from the home?
13. Was the security interest properly perfected?
14. Has the creditor or debtor put forth valid evidence as to the current value of the property?
15. Has the property been validly appraised?
16. Does the language of the security interest apply generally to the household goods and furnishings or specifically to itemized property?
17. Number of each item of property covered by the lien the debtor is attempting to avoid.
18. Is the property necessary to the debtor's fresh start?
19. Is the property held primarily for personal, family, or household use?

The court will now turn to the Property at hand. The majority of court decisions on these issues are changing with the times and the technological revolution so that the resulting list of items interpreted as household goods and furnishings has taken on a more liberal character. (See cite listing, *supra*, including microwaves, home computers, video games, ski and fishing equipment under the heading of household goods and furnishings whose liens can be avoided.) While this trend is the result of necessary evolution, still each case must turn on its own facts, keeping in mind the Congressional concern that the debtor be guaranteed his "fresh start." The necessity of an item of personal property to the debtor's "fresh start" is the bottom line issue.

General offered no proof that their security interest in the Property was properly perfected. There is no evidence of the actual fair market value of the Property at the time of the loan in April of 1987 or an appraisal. General submitted a Personal Property Appraisal, marked "Exhibit A" to the AMENDED MEMORANDUM OF THE CREDITOR wherein the purported "Replacement Value" of the Property was listed as $7,505.00. The name of the person who completed this document is not reflected on the document, but it was presumably the debtor. General relies on this value of $7,505.00 as the value of the Property while the debtors argue that at best, the current fair market value is $800.00. The amount of the loan from General to the debtor was $1,638.72 with the alleged replacement value of the collateral securing that loan in the amount of $7,505.00.

It has been held that Congress has determined that as a generality, all nonpossessory nonpurchase-money liens in household goods or furnishings have little or no value and has legislated accordingly. Therefore a person arguing to the contrary has the burden of establishing that Congress was in error. *Morris v. Associates Finance Company (In re Morris)*, 12 B.R. 321, 351 (Bankr.N.D.Ill.1981). Because General has not put forth evidence to the contrary, the court finds that for all items of Property in issue, except the power tools, General has failed to prove substantial value in its lien.

The court has specifically exempted the items covered by the term "power tools" because the generality with which the parties have described the collateral (*i.e.* power tools, MEMORANDUM at 1; various power tools including saws and lathes valued at $3,700.00 AMENDED MEMORANDUM at 1.) is so broad that the court cannot reasonably formulate an appropriate order. The resulting order could potentially give the debtors relief, to which they are not, as a matter of law, entitled. Greater particularity must be provided for the court to rule on the applicability of the lien avoidance remedy to those items. For guidance on specificity the parties should refer to the local rules of this court, which provide:

When property of the debtor is claimed as exempt under applicable law, *such property shall be adequately described and itemized* in the schedules in the place provided therefore. *General terms of description (i.e. "automobiles," "common stock," etc.) are not sufficiently descriptive.* Rules of the United States Bankruptcy Court for the Northern District of Indiana, Rule B–206 (emphases supplied).

The debtors did not itemize their estimate or the value of the Property, so the court is unable to determine if the Property has extraordinary value as compared to items of the same type found in other households.

General did not submit, for the record, a copy of its security interest or any of the related loan documents. Without these documents, the court is unable to determine if the language of the security interest applies generally to household goods and furnishings or specifically to the itemized Property at issue. The court is likewise unable to determine if the Property was an equal and legitimate source of security in relation to the value of the loan, without the aforementioned documents and an appraisal or agreed value of the Property, upon which General relied in extending the loan. Additionally, the court is unable to determine if the security interest could be characterized as a contract of adhesion.

■ The parties stipulated that the debtors gave General "... a security interest in certain property." PRETRIAL STATEMENT at 2. The court finds that based on this fact, the lien was consensual rather than involuntary. The court has no information about the debtors' station in life. The court finds that the camera, aquarium, bicycle, lawnmower, grill, calculator, and gym weight set is property held primarily for personal, family, or household use and items commonly found in the average American household. Because of the specific model, age, and degree of importance to the functioning of a household, the court finds the property necessary to the debtors' "fresh start."

The court finds that camping equipment, such as a stove, a lantern, a tent or a sleeping bag constitute recreational property, that as a general rule, would only be used away from the dwelling. These are not items commonly found in the average household. Because the court has no information on the debtors' station in life, that aspect cannot be considered. This leads to the inescapable conclusion, and the court so finds, that in this case the camping equipment is luxury property rather than household goods or furnishing and not subject to the lien avoidance provisions of § 522(f).

While the court finds that as a general rule a portable radio and tape player may commonly be found in the average household and would normally be held to be household goods or furnishings subject to the lien avoidance provisions, the fact that this is a *second* portable radio and tape player is dispositive. When the court considers the number of each item of property covered by the lien the debtors are attempting to avoid, the court cannot find that a second portable radio and tape player is necessary to the debtors' "fresh start."

The coin collection whose replacement value, General contends, is in the amount of $200.00, will be construed as tangible personal property. Cash is a type of property commonly found in the average household and therefore is a household good or furnishing. *In the Matter of Koehl,* Civil No. F88–242 (District Court, Northern District of Indiana, Fort Wayne Division, November 1, 1988) (W.C. Lee, J.).

As for the 35 fishing rods and reels, where these items are necessarily used away from the dwelling and would generally be construed as recreational in nature, they are items that would be more commonly found in the average household than camping equipment. However, when the number of items of property covered by the lien the debtors are attempting to avoid is considered, 35 is at best excessive and thus a luxury. The court holds that one fishing rod and reel per person limited to the number of debtors and dependents will be construed as household goods or furnishings subject to the lien avoidance provisions of § 522(f).

*Conclusion*

The court has examined the issues in light of the record and applicable statutes, caselaw, and other knowledgeable references, and finds that the proper approach to the issue of whether property constitutes household goods or furnishings subject to the lien avoidance provisions of 11 U.S.C. § 522(f), is to evaluate each case on its merits and particular facts and circumstances by applying a totality of the circumstances analysis employing, among others, the criteria set out in this Memorandum of Decision, *supra.* A judgment will be issued, consonant with this Memorandum of Decision voiding the liens on certain items of property and allowing the liens on other items of property.

SO ORDERED.