**In re Dan NEAL and Mary Neal, Debtors.**

**Bankruptcy No. 592–50153–12.**

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Dec. 24, 1992.

Mike M. Calfin, Harding, Bass, Fargason, Booth & Calfin, Lubbock, TX, for debtors.

Nancy Koenig, Asst. U.S. Atty., U.S. Dept. of Justice, Lubbock, TX, for FmHA.

Walter O'Cheskey, Lubbock, TX, Chapter 12 Trustee.

## MEMORANDUM OF OPINION ON LIEN AVOIDANCE

*JOHN C. AKARD, Bankruptcy Judge.*

The first question presented in this case is whether a nonpossessory, nonpurchasemoney security interest was extinguished when the Debtors paid the debt it secured. The second question presented is whether a nonpossessory, nonpurchase-money security interest in farm equipment may be avoided by the Debtors under § 522(f)(2)(B) of the Bankruptcy Code [1] where the securi-

---

1. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

ty interest was created during the interim between the enactment date and the effective date of the Code.[2] The Court concludes that the liens may be avoided.

## FACTS [3]

On March 3, 1992 Dan and Mary Neal (the Debtors) filed a petition for relief under Chapter 12 of the Bankruptcy Code. The Debtors are farmers. The Debtors' Schedule of Exemptions claimed the following five items as exempt tools of the trade:

1968 John Deere 4020 Tractor
1972 John Deere 4020 Tractor
16' Gooseneck Trailer
Shredder
Cotton Trailer

The total personal property the Debtors claimed as exempt did not exceed the $60,000 personal property exemption allowed by the Texas Property Code. TEX.PROP. CODE ANN. § 42.001(a)(1) (Vernon Supp. 1992).

At the time they filed their petition, the Debtors owed the Farmers Home Administration (FmHA) $304,812.85 as a result of seven promissory notes they executed over 17 years, as indicated in the following table:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 03/16/74 [4] | | 49,100.00 | | | | | |
| 02/20/75 | 25,000.00 | | | | | | |
| 05/10/79 | | | 75,000.00 | | | | |
| 05/22/81 | | | | 13,200.00 | | | |
| 04/23/85 | | | | | 25,000.00 | | |
| 03/19/86 | | 58,652.29 | 57,040.29 | 12,211.27 | 27,316.78 | | |
| 05/01/86 | | | | | | 58,900.00 | |
| 03/26/87 | | | | | | 56,415.12 | |
| 04/27/87 | | | | | | | 25,000.00 |
| 02/26/88 | | 56,553.99 | 86,551.58 | 12,190.90 | | | 86,888.46 |
| 04/27/89 | | 58,948.00 | 93,147.00 | 12,707.00 | | | 92,405.00 |

On February 20, 1975, the Debtors signed a security agreement granting the FmHA a nonpurchase-money, nonpossessory security interest in listed equipment including the five items claimed as exempt and at issue in this proceeding.

A May 10, 1979, security agreement granted the FmHA a security interest in the same equipment as did security agreements dated May 22, 1981, April 27, 1987 and April 17, 1989. The Debtors filed a motion to avoid the FmHA's security interest in the listed items of farm equipment.

## POSITIONS OF THE PARTIES

The Debtors argued that, while the FmHA's initial security interest may have been created prior to enactment of the

---

2. This court has jurisdiction over this matter under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (K) and (O).

3. The court adopts the Stipulated Facts contained in the Proposed Pre–Trial Order and Stipulations filed by the parties on September 15, 1992. The court will state only such facts as are necessary to an understanding of its decision.

4. The 1974 note was secured by real estate and is not at issue in this case.

Bankruptcy Code, the payment of the debt it secured extinguished the security interest. The Debtors contended that the next security interest was created after the enactment of the Code; therefore, the lender acted with notice of the avoidance provisions of the Code and should be subject thereto.

The FmHA argued that the security interest in equipment was created before enactment of the Bankruptcy Code and continued ever since, because the Debtors remained indebted to the FmHA by virtue of other extensions of credit. FmHA contended its security interest may not be avoided (1) since Congress did not intend the Code to apply to liens created prior to the Code's enactment and (2) because such application would be unconstitutional. Additionally, the FmHA argued that even if its initial security interest was extinguished, the security interest created by the May 10, 1979 security agreement was created before the effective date of the Bankruptcy Code; therefore it is not subject to the Code's lien avoidance provisions. Finally, the FmHA argued that the lien avoidance provisions of § 522(f) do not include large, expensive items of farm machinery such as the items at issue here.

## STATUTES

11 U.S.C. § 522(f) states in pertinent part:

> (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
> . . . .
>> (2) a nonpossessory, nonpurchase-money security interest in any—
>> . . . .
>> (B) implements, professional books, or tools, of the trade of the debtor. . . .

Tex.Prop.Code Ann. § 42.002(a) (Vernon Supp.1992) states in pertinent part:

> (a) "The following personal property is exempt under Section 42.001(a):
> . . . .

> (3) farming or ranching vehicles and implements;
> (4) tools, equipment, books, and apparatus, including boats and motor vehicles used in a trade or profession. . . ."

## DISCUSSION

### Constitutionality

On November 6, 1978, acting under the authority of the United States Constitution, art. I, § 8, cl. 4, Congress passed the Bankruptcy Reform Act of 1978 (now the Bankruptcy Code). As adopted, the Code was effective as to cases filed on or after October 1, 1979. The bankruptcy power conferred on Congress by the Constitution has been regularly construed to authorize the retrospective impairment of contractual obligations. *Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 188, 22 S.Ct. 857, 860, 46 L.Ed. 1113 (1902). Congress has been found to have rationally exercised this authority in the lien avoidance provisions of § 522(f)(2). *United States v. Sec. Indus. Bank*, 459 U.S. 70, 74, 103 S.Ct. 407, 410, 74 L.Ed.2d 235 (1982). As set out above, § 522(f)(2) permits individual debtors in bankruptcy proceedings to avoid liens on certain property.

### Tools of the Trade

In *Owen v. Owen*, — U.S. —, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), the United States Supreme Court announced the following rule to determine whether a lien may be avoided under § 522(f): "[A]sk not whether the lien impairs an exemption to which the debtor is in fact entitled, but whether it impairs an exemption to which he *would have been* entitled but for the lien itself." — U.S. at — — —, 111 S.Ct. at 1836–37. Before determining the application of § 522(f), the court must first determine whether the Debtors would be entitled to an exemption for the farm equipment at issue.

■ Since the Debtors elected the Texas exemptions, the question becomes whether this farm equipment is exempt under § 42.-002(a)(4) of the Texas Property Code. Tex.

PROP.CODE ANN. § 42.002(a)(4). Under § 42.002(a)(4), items may be claimed as exempt if they are "tools ... used in the trade or profession" of the debtor. In its *In re Nash* decision, 142 B.R. 148 (Bankr. N.D.Tex.1992), this court acknowledged that the test for determining whether an item qualifies as a tool of the trade of farming is whether the item is not only "fairly belonging to or usable in the trade" of farming but is also "peculiarly adapted to" farming. 142 B.R. at 152 (*citing Meritz v. Palmer (In re Meritz)*, 266 F.2d 265, 268 (5th Cir.1959); *Hrncirik v. Farmer's Nat'l Bank (In re Hrncirik)*, 138 Bankr. 835, 840 (Bankr.N.D.Tex.1992)). In *Nash*, this court found that tractors and other farm equipment—items such as those involved in this case—were in fact "tools of the trade" in the farming business. 142 B.R. at 152–153 (*citing Cen. Nat'l Bank & Trust Co. v. Liming (In re Liming)*, 797 F.2d 895, 901 (10th Cir.1986)). Therefore, the court holds that the Debtor's farm equipment qualifies for exemption as tools of the trade under Texas law.

According to this court's decision in *Nash* and the authorities cited therein, the phrase "implements, professional books, or tools, of the trade of the debtor" contained in § 522(f)(2)(B) "takes on the character of the statute providing the exemptions, be it federal or state." 142 B.R. at 153. Therefore, since the items qualified for exemption under Texas law, they are within the purview of § 522(f)(2)(B). Additionally, this court determined in *Nash* that *Owen* should be applied retroactively. 142 B.R. at 151. Therefore if, under the facts of this case, the court determines that the liens in question were created at a time in which § 522(f) was intended by Congress to apply, then those liens may be avoided.

### The 1975 Security Agreement

■ In *United States v. Sec. Indus. Bank, supra,* the United States Supreme Court held that Congress did not intend the lien avoidance provisions of § 522(f) to be applied retrospectively to avoid liens acquired before the November 6, 1978 enactment date of the Code. 459 U.S. at 81–82, 103 S.Ct. at 413–14. Therefore, if the security interest created by the 1975 security agreement has not been extinguished, it would not be avoidable under § 522(f)(2).

The Debtors paid the $25,000 debt represented by the promissory note secured by the 1975 security agreement on March 24, 1980. Texas law is clear that "a lien is but an accessary to, or mere incident of, the debt secured by it, and is discharged and extinguished, ipso facto et eo instante, by payment of the debt by the person primarily obligated by contract therefore." *Green v. Am. Nat'l Ins. Co.,* 452 S.W.2d 1, 4 (1970) (quoting *Spencer–Sauer Lumber Co. v. Ballard,* 98 S.W.2d 1054 (Tex.Civ. App.—San Antonio 1936, no writ)). Therefore, the court holds that the payment of the debt discharged the 1975 security agreement.

### The 1979 Security Agreement

■ The May 10, 1979 security agreement created a security interest after the Code was enacted but before it became effective. There is substantial authority on both sides of the question whether § 522(f) may be used to avoid security interests created in the so-called "gap period."

In *United States v. Sec. Indus. Bank,* the Supreme Court only decided whether Congress intended § 522(f)(2) to apply to liens created before the enactment of the Bankruptcy Reform Act of 1978 when it was signed by the President on November 6, 1978. 459 U.S. at 78, 82 n. 11, 103 S.Ct. at 412, 414 n. 11. After determining that such retroactive application would raise a substantial constitutional question, the Court invoked the canon of construction which required it to "first ascertain whether a construction of the statute is fairly possible by which the constitutional question may be avoided." 459 U.S. at 78, 103 S.Ct. at 412 (citations omitted). The Court noted that the rule of statutory construction for bankruptcy statutes is that "[n]o bankruptcy law shall be construed to eliminate property rights which existed before the law was enacted in the absence of an explicit command from Congress." 459

U.S. at 81, 103 S.Ct. at 414. Finding no such command, the Court held that § 522(f)(2) was to be construed as not to apply to pre-enactment liens, thus avoiding a Takings Clause issue. 459 U.S. at 82, 103 S.Ct. at 414.

*United States v. Sec. Indus. Bank* did not address the question presented in this case, since the May 10, 1979 security agreement created a security interest after the enactment of the Code but before its effective date. The Supreme Court indicated that such gap liens may be subject to the avoidance provisions of § 522(f) when it said "... Congress might have intended that provisions that destroy previously vested property rights apply only to interests that came into effect after the enactment date." 459 U.S. at 79, 103 S.Ct. at 413.

■ This court agrees with the decisions which held that the avoidance of gap period liens does not present the constitutional issues present in *United States v. Sec. Indus. Bank,* since those creditors are charged with notice of the section as of the date of enactment. *United States v. Household Fin. Co. (In re Groves),* 707 F.2d 451, 452–53 (10th Cir.1983); *Webber v. Credithrift of Am., Inc. (In re Webber),* 674 F.2d 796, 804 (9th Cir.), *cert. denied, Credithrift of Am., Inc. v. Webber,* 459 U.S. 1086, 103 S.Ct. 567, 74 L.Ed.2d 931 (1982). The legislative history of the Bankruptcy Reform Act of 1978 (the Code) indicates that Congress delayed the effective date of the Code to allow the public and the legal community time to familiarize themselves with the Code, to structure business dealings accordingly, and to allow for the development of a statistical measurement system to measure the caseload generated by the Code. Pub.L. 95–598, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5806, 5952–54, 6243–48. Section 402 of the Bankruptcy Reform Act of 1978 provided that the Code was effective as to all cases filed after October 1, 1979. Thus, the filing date of the case determines the applicable law.

■ A primary goal of the revisions to the Code and especially of the avoidance provisions of § 522(f) was to serve a federal interest in seeing that a debtor survives bankruptcy with adequate possessions to avoid becoming a public charge and to make a fresh start. 1978 U.S.C.C.A.N. 6087. Consistent with this concept, the court holds that § 522(f)(2) may be applied to avoid the security interests created by the May 10, 1979 security agreement.

The FmHA asserted that the 1979 loan was secured by the future advances clause of the 1975 security agreement. That does not comport with the facts of this case. In 1979 the FmHA got another security agreement, clearly indicating that the 1979 loan was not secured by the 1975 security agreement.

■ The 1981, 1987, and 1989 security agreements were all executed after the effective date of the Bankruptcy Code and, therefore subject to the lien avoidance provisions of § 522(f).

## CONCLUSION

The security interest created by the February 2, 1975 security agreement was extinguished by payment of the debt it was intended to secure. The security interest created during the gap period on May 10, 1979 is subject to the lien avoidance provisions of § 522(f)(2)(B) and is, therefore, avoided as to the five items the Debtors claimed as exempt.

ORDER ACCORDINGLY.[5]

---

5. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014. This Memorandum will be published.